## In re Kenneth Bailey, Sr.

[992 A.2d 276]

No. 07-454

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed December 24, 2009

*Allison N. Fulcher* of *Martin & Associates,* Barre, for Petitioner-Appellant.

*Matthew F. Valerio,* Defender General, and *Anna Saxman,* Deputy Defender General, Montpelier, for Amicus Curiae.

*Michael Rose,* St. Albans, for Amicus Curiae.

¶ 1. **Burgess, J.** Attorney Allison Fulcher seeks to withdraw as appointed counsel for petitioner Kenneth Bailey, Sr., in this post-conviction relief (PCR) appeal. As discussed below, we grant her request.

¶ 2. The record indicates the following history. Petitioner pled guilty to domestic assault and sexual assault in May 2004. He filed a pro se PCR petition in September 2005. Counsel from the Prisoners' Rights Office apparently represented petitioner at some point, but counsel withdrew in October 2005. Petitioner indicated that he wished to represent himself. Following a hearing at which petitioner appeared pro se, the trial court denied the PCR petition, finding it without merit. Petitioner then filed a pro se notice of appeal as well as an application for public defender services.[1] Attorney Fulcher was assigned to represent petitioner on appeal.

¶ 3. In August 2008, Fulcher moved to withdraw, asserting that she could not continue to represent petitioner in light of Vermont Rule of Professional Conduct 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.") and Rule 3.3 (a lawyer shall not knowingly make a false statement of material fact or law to a tribunal), as well as 13 V.S.A. § 5233(a)(3) (needy person entitled to counsel in PCR proceeding "where the attorney considers [the legal claims] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"). Fulcher indicated that petitioner did not oppose her request to withdraw.

---

[1] Petitioner's application for public defender services was made on a standardized form and filed with the Franklin Superior Court in December 2007. This application requires a party to detail his or her assets and expenses so as to allow the court clerk and trial judge to determine if he or she is a "financially needy person." See generally 13 V.S.A. § 5236. In this case, a line was checked on the form indicating that because "applicant is financially needy and has been charged with a serious offense, an attorney is assigned to represent the applicant as soon as any co-payment is paid to the court clerk." Petitioner's application was then filed in this Court, and in January 2008, the Supreme Court docket clerk sent a copy of this form to the Defender General's Office. See 13 V.S.A. § 5235 ("If a . . . court determines that a person is entitled to be represented by an attorney at public expense, the . . . court . . . shall promptly notify the appropriate public defender."); *id.* § 5272. In February 2008, attorney Fulcher filed a docketing statement and transcript order form with this Court. Transcripts were completed in April 2008. Following several extensions of time, counsel moved to withdraw in August 2008. As noted above, petitioner indicated that he did not oppose counsel's request to withdraw, although he also sought the appointment of new counsel. Petitioner has since filed a pro se brief on the merits of his appeal.

¶ 4. In an entry order signed by Justice Dooley, counsel was directed to provide additional information to support her motion. Specifically, she was ordered to submit an affidavit that contained: (1) a specification of petitioner's claims; (2) law or argument that arguably supported each claim; and (3) a statement that counsel did not consider petitioner's claims to be warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. The order cited *Anders v. California*, 386 U.S. 738 (1967), and the information requested is similar to a so-called *Anders* brief. See *id.* at 743-44 (attorney appointed to represent indigent defendant in direct appeal who seeks to withdraw on grounds that case is frivolous must provide court with brief identifying anything in the record that might arguably support the appeal; indigent is allowed to supplement this brief, and then court will decide if case is wholly frivolous). Counsel then asked the full Court to review the single Justice entry order, which was granted.

¶ 5. Fulcher argues that she should be allowed to withdraw without providing the information identified above. She maintains that the considerations underlying *Anders* are not present here, and that her withdrawal is ethically preferable to filing an affidavit that outlines the shortcomings of her client's case. The Office of the Defender General filed an amicus brief, echoing these arguments. It explains that the Legislature expressly limited the right to state-funded legal representation in PCR proceedings to nonfrivolous cases as determined by counsel, 13 V.S.A. § 5233(a)(3), and that the Defender has an in-house system to evaluate whether a PCR is frivolous. By limiting the right to counsel to nonfrivolous cases, the Defender continues, the Legislature chose to conserve public money and ensure representation for petitioners whose cases do have merit. The Defender maintains that the existing review procedure adequately protects petitioners. The adequacy of the Defender's review process — which involves an initial review of the record and file by two attorneys, and if neither can find a meritorious claim, a review of these materials by a third attorney — is not challenged here.

¶ 6. The Court appointed attorney Michael Rose to file an amicus brief opposing the Defender's position. He emphasizes that the Court has discretion in ruling on a motion to withdraw, citing *Cameron v. Burke*, 153 Vt. 565, 573, 572 A.2d 1361, 1365 (1990) (Supreme Court reviews trial court's ruling on motion to withdraw

for abuse of discretion) and V.R.A.P. 45.1(f) ("Leave to withdraw after the appeal has been docketed will be granted only for good cause shown and on such terms as the Court may order."). He maintains that 13 V.S.A. § 5233(a) does not require that the Court defer to the Defender's evaluation of the merits of a particular PCR. More importantly, he argues, the statute did not divest the Court of its authority under V.R.A.P. 45.1(f) to grant or deny motions to withdraw. Attorney Rose asserts that the information requested in the one-Justice entry order will allow the Court to properly exercise its discretion, and it will enable the Court to determine if the attorney's opinion is honestly held and the product of adequate, sound consideration. He also suggests that because this information is provided at the Court's request, the attorney will not be placed in an ethical bind.

¶ 7. While the Court generally enjoys procedural discretion in considering motions to withdraw under Rule 45.1, we find no basis to require counsel to file an *Anders* brief to support a request for withdrawal in this case. Such a requirement would defeat the cost-saving purpose of the amendment to 13 V.S.A. § 5233(a)(3), and it would expand the statutory right to counsel to cases that this Court, rather than the appointed attorney, considers appropriate. Cf. *Maloney v. Bower*, 498 N.E.2d 1102, 1104 (Ill. 1986) (chief judge of circuit court did not have authority to issue general order directing judges to appoint public defenders to represent indigents in civil contempt proceedings, thereby enlarging duties of office of public defender beyond what legislature had provided). Moreover, review of the withdrawal in the context of this case would literally elevate form over substance. The "appointment" of counsel was accomplished by a ministerial referral to the Defender General's Office. Counsel could not determine whether she would represent appellant under § 5233(a)(3) until after an examination of the issues prompted by the pro forma referral.

¶ 8. The Public Defender Act (PDA) explicitly governs the "extent of [legal] services" due to indigent PCR litigants, and it expressly conditions a petitioner's entitlement to representation on counsel's assessment of the merit of the legal action. 13 V.S.A. § 5233(a)(3). The statute provides in pertinent part that, after appeal, a "needy person" is entitled:

> To be represented in any other postconviction proceeding which may have more than a minimal effect on the

length or condition of detention *where the attorney considers the claims, defenses, and other legal contentions to be warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.*

*Id.* § 5233(a)(3) (emphasis added).

■ ¶ 9. An *Anders*-type explanation justifying counsel's withdrawal is not required in the PCR context. The withdrawal prerequisites called for in *Anders* are designed to vindicate a defendant's *constitutional* right to counsel, 386 U.S. at 744, and, as the United States Supreme Court has recognized, a petitioner has no constitutional right to counsel in civil PCR proceedings. See *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) (rejecting notion that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions). Absent an underlying constitutional right to counsel in state post-conviction proceedings, there is "no constitutional right to insist on the *Anders* procedures which were designed solely to protect that underlying constitutional right." *Id.* at 557. "*Anders* established a prophylactic framework that is relevant when, and only when, a litigant has a previously established constitutional right to counsel." *Id.* at 555; see also *People v. Breaman*, 939 P.2d 1348, 1351 n.2 (Colo. 1997) (en banc) (citing *Finley* and concluding that appointed attorney who seeks to withdraw from representing defendant in post-conviction proceeding may inform court that he or she believes defendant's claims are without merit and request permission to withdraw without filing *Anders* brief).

¶ 10. Rather than being grounded in the constitution, petitioner's right to counsel is created, defined, and limited by statute. See *In re Gould*, 2004 VT 46, ¶ 13, 177 Vt. 7, 852 A.2d 632 (noting that Public Defender Act sets forth statutory right to counsel in PCR proceedings even though providing such assistance is not constitutionally compelled). Before 2004, the PDA guaranteed an indigent litigant the right to representation in any post-conviction proceeding "that . . . the needy person considers appropriate." 13 V.S.A. § 5233(a)(3) (1998) (enacted 1971, No. 161 (Adj. Sess.), § 6). In light of this language, we held that the state was obligated to provide PCR counsel upon the litigant's request, regardless of the merit of the claims raised in the PCR or the fact that representation was not constitutionally compelled. *Gould*, 2004 VT 46, ¶ 13.

■ ¶ 11. In 2004, likely in response to *Gould,* the Legislature amended the statute to eliminate the language above. Rather than have the petitioner determine when counsel would be provided, the Legislature instead gave counsel the exclusive authority to accept or decline each case. See 2003, No. 157 (Adj. Sess.), § 10 (specifying that entitlement to representation in PCR proceedings attaches "where the attorney considers the . . . contentions to be warranted by existing law or by a nonfrivolous argument"). It is thus clear from the plain language of the statute that counsel must decide when state-funded legal representation is warranted in a post-conviction proceeding. See *Ice Ctr. of Wash. W., Inc. v. Town of Waterbury,* 2008 VT 37, ¶ 7, 183 Vt. 616, 950 A.2d 464 (mem.) (where language of statute is plain and unambiguous, Court will enforce it according to its terms). This construct reasonably serves a petitioner's statutory interest in assistance of counsel in civil proceedings, while requiring no second-guessing by courts, nor imposing any obligation, or need, for an attorney to declare and expose the relative weaknesses in a petitioner's legal position.

■ ¶ 12. It follows that when counsel avers to this Court that the "claims, defenses, and other legal contentions" presented in a PCR are not "warranted by existing law or nonfrivolous argument," counsel may withdraw, and the state's obligation to petitioner is fulfilled, under the statute. Counsel's representation to the court that he or she cannot ethically advocate her client's position, particularly when confirmed by the Defender's review, satisfies the statute. This approach implements 13 V.S.A. § 5233(a)(3), and avoids having the attorney "sandbag" the client's case. See *Gould,* 2004 VT 46, ¶ 20 (criticizing attorney's statement at PCR hearing that there was "not even colorful grounds, not even a scintilla of evidence" to support client's position, and indicating that such statements converted attorney into client's "de facto adversary," unable to meet client's expectations of zealous representation).

■ ¶ 13. We presume that an attorney acts diligently in assessing a petitioner's claims, and that, as an officer of the court, he or she is not misrepresenting the situation. See V.R.Pr.C. 3.3(a)(1); see also *id.* cmt., Rule 3.3(a)(1) (explaining that assertion purporting to be based on lawyer's own knowledge, as in affidavit by lawyer or in a statement in open court, may properly be made

only when lawyer knows the assertion is true or believes it to be true on the basis of reasonably diligent inquiry). We also take judicial notice of the fact that the Defender is not reluctant to press unpopular or arguably marginal claims to judgment. Courts rely daily on implicit attorney representations that their pleadings and advocacy are, without explanation, minimally supportable at law, and we are informed of no reason why the rare, but ethically bound, representation to the contrary should not be equally accepted in the limited circumstances of withdrawal from PCR proceedings. See, e.g., V.R.C.P. 11(b)(2) (by presenting pleading to court, attorney certifies that to the best of his or her knowledge, information, and belief, formed after inquiry reasonable under circumstances, "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law").

¶ 14. This is not to suggest that lawyers are infallible. In the relatively few instances where the Defender withdraws, however, petitioners can continue with their litigation, albeit pro se, and may still prevail in the remedy sought if, in the court's view, the claim is ultimately established. Moreover, if it appears to the trial court during pretrial proceedings that there may be substance and merit to a petition, the court may reappoint counsel to reevaluate the case accordingly.

¶ 15. There is no constitutional or statutory right to insist that counsel elaborate on their motions to withdraw, and it would undermine the intent of 13 V.S.A. § 5233(a)(3) to require counsel to do so. The time and resources spent in documenting and litigating the frivolousness of the underlying claim would likely compromise whatever remained of the lawyer-client relationship, while forcing the appointed counsel to walk an ethical tightrope. The same time and effort would likely consume some or all of the scarce resources available to the Defender sought to be saved by that office in denying representation, and sought to be saved by the Legislature in authorizing the Defender to deny service for lack of merit.

¶ 16. We thus hold that Attorney Fulcher is not required to file an *Anders*-like affidavit before being allowed to withdraw. Her representation that she cannot continue to represent petitioner under the ethical rules and in light of 13 V.S.A. § 5233(a)(3) is

sufficient, and her motion to withdraw is granted. No new counsel will be appointed at this time. Petitioner can proceed pro se and, as stated in a prior entry order, he must file his brief and printed case within thirty days of the date of this order.

¶ 17. Neither dissenting opinion is persuasive. Both treat this case as if petitioner had a constitutional right to counsel in PCR proceedings, rather than a limited statutory right. Both ignore the plain terms of 13 V.S.A. § 5233(a), and rely almost exclusively on constitutional right-to-counsel cases. As discussed above, the policy rationales underlying those cases are not applicable here as the right at issue is a limited statutory right, not a constitutional one. Out-of-state cases involving different statutory language are equally unpersuasive. Cf. *post*, ¶¶ 61, 63. The dissents also address issues beyond the scope of the withdrawal request presented here. We are asked to decide if Attorney Fulcher must file an *Anders* brief before she is allowed to withdraw — we are not asked to decide if Attorney Fulcher waived her right to withdraw, nor are we asked to evaluate the validity of the Defender's screening process.[2] Cf. *post*, ¶¶ 30, 43-45.

¶ 18. Further, both dissents are erroneously premised on the formality of counsel being "assigned" by this Court. This Court's "assignment" of counsel is based solely on whether a petitioner has demonstrated that he or she is a "financially needy" person. As previously discussed, a "needy person," by statute, has the right to be represented by an attorney in a PCR proceeding only in cases that the attorney decides are nonfrivolous. Pursuant to an administrative order, the Court notifies the public defender "[i]n all cases where the right of a needy person to be represented by counsel exists, and is not waived," and the Court appoints counsel if "the public defender is unable, due to a conflict of interest or otherwise, to represent the person in question," among other circumstances. A.O. 4, § 3. Taken literally, no assignment should occur until the needy person has established his or her statutory right to counsel. Presumably, such assignment would follow the Defender's review process and a determination by counsel that the case is not frivolous.

¶ 19. Relying on this administrative order, however, Justice Johnson advocates an approach that would create a Catch-22 for

---

[2] No party raises the issue of the timeliness of Fulcher's request; and given the absence of demonstrable prejudice, the delay does not concern us here.

attorneys. *Post,* ¶ 52. Attorneys would not be allowed to withdraw once they are in the case, but, under her interpretation of A.O. 4, they cannot do anything to prevent being assigned. The result would be that counsel is always provided in PCR appeals, regardless of the merit of the case, rendering the amendment to § 5233 a nullity. See *State v. Baldwin,* 140 Vt. 501, 511, 438 A.2d 1135, 1140 (1981) (in construing statute, Court must presume that Legislature did not enact meaningless legislation, and must not construe statute so as to render it a nullity).

¶ 20. The concern that we are abdicating some obligation owed to PCR litigants is unfounded. It is not for this Court to "approve" the attorney's decision whether to represent his or her client, and there is no "rubber-stamping" involved. Cf. *post,* ¶¶ 24, 41. The attorney does not need this Court's permission to determine whether to represent his or her client, and the statute does not require us to review the substance of counsel's decision. A ruling on the motion to withdraw does not require us to inquire as to the merits of the case at all. It simply recognizes that the Legislature has left it to the attorney to decide which PCR cases to pursue, not this Court. This Court will conduct an independent review of the merits of the case when it is heard.[3]

¶ 21. This approach serves the purpose of the newly-amended statute and conserves scarce Defender resources. As one court has noted in addressing a similar issue:

> It is not inappropriate to observe that in many places of the State offices of the public defender are now overburdened and struggle to fulfill their statutory obligations to provide representation for the indigent. This condition . . . explains in part the unwillingness of those given the important responsibilities of public defenders to assume obligations beyond what the Public Defender Act imposes.

*Maloney,* 498 N.E.2d at 1104-05.

¶ 22. This Court abdicates no responsibility because no such responsibility is assigned. As we have previously recognized,

---

[3] While Justice Dooley complains that it is difficult to follow the pro se argument in this case, this is the same exact argument that the litigant insisted that Attorney Fulcher advance on his behalf. It is because Attorney Fulcher refused to make this argument that petitioner sought representation by another attorney.

the Defender "has the primary responsibility for providing needy persons with legal services" under the PDA, and "[n]o other official or agency of the state may supervise the defender general or assign him duties in addition to those prescribed" under the relevant statutes. 13 V.S.A. § 5253(a); *Russell v. Armitage*, 166 Vt. 392, 403, 697 A.2d 630, 637 (1997) (citing this provision and concluding that plain language of PDA does not authorize courts to assign civil contempt proceedings to Defender even where trial court considers ordering incarceration, but recognizing court's inherent power to assign counsel to represent persons constitutionally entitled thereto). We agree with the *Maloney* court's observation that "[c]ourts, when acting under the Public Defender Act, can make appointments only as the Act provides. . . . If there are to be new responsibilities for the public defender's office it will be for the legislature to define them." 498 N.E.2d at 1104.

¶ 23. The language of the statute at issue in this case is clear, as is the legislative intent underlying this provision. There is no obligation or any inherent need to impose the additional burdens on counsel advanced by the dissenting opinions.

*Attorney Fulcher's motion to withdraw is granted. No new counsel will be appointed. Appellant shall file his brief and printed case within thirty days of the date of this order.*

¶ 24. **Dooley, J.,** dissenting. The majority has endorsed a procedure under which the Defender General determines the merits of petitioner's case, through a secret process undisclosed to petitioner or this Court, and we rubber stamp the result to deny petitioner any counsel for his appeal and effectively dismiss the appeal. This is done, we are told, to protect petitioner from the "sandbagging" of his appeal by appellate counsel, as if this process was created to help the client. *Ante,* ¶ 12. In fact, the hallmark of this process is prejudice to the client, with this Court intentionally ignoring that prejudice. In my view, the process compromises our role to ensure proper treatment of litigants. Neither the Public Defender Act, nor the United States Constitution, nor this Court's inherent power permits appointed counsel unilaterally to withdraw from representation of a needy person without an independent judicial review to ensure that the person's interests have been adequately represented. What the majority dismisses as "second-guessing by courts," *ante,* ¶ 11, constitutes, in fact, the minimal process to which every individual, regardless of wealth, is entitled. Accordingly, I respectfully dissent.

¶ 25. The facts here are very important even though they are largely overlooked by the majority opinion.[4] Petitioner handled his case in the superior court without a lawyer and applied for a lawyer on appeal. The trial court granted the motion on January 11, 2008, and issued an order stating that "an attorney is assigned to represent the applicant." At some point shortly thereafter, conflict counsel, Allison Fulcher, was selected as the lawyer for petitioner, and she filed a docketing statement on February 4. She made no disclosure that she accepted the appointment conditional on a review process by her or the Defender General to determine the merits of petitioner's appeal. She never stated that, in the majority's words, "assignment would follow the Defender's review process and a determination by counsel that the case is not frivolous." *Ante,* ¶ 18.

¶ 26. The docket clerk determined the record was complete on April 10. On April 29, the parties filed a stipulation to extend the time for appellant's brief to June 9, explaining that the extension was necessary "in view of the Assigned Appellate Contractor's caseload, to permit an adequate presentation of appellant's case." On June 6, counsel filed a motion for another extension until August 8, saying that "the time requested is necessary as counsel is unable to complete the brief by the current deadline consistent with the appellant's right to effective assistance of counsel on appeal."

¶ 27. On August 6, some seven months after appointment, counsel filed the motion to withdraw that led to this decision, asserting that "pursuant to Rules 3.1 and 3.3 of the Vermont Rules of Professional Conduct and under 13 V.S.A. § 5233(a)(3) . . . counsel cannot continue to represent the Appellant in furtherance of this appeal." She also asserted that she had "discussed the same with the Appellant, who by oral communication, did not oppose this motion." There was no explanation of how the rules would be violated by counsel's representation or why the statutory section prohibited the representation. There was no disclosure that there had been some kind of internal review process. This was actually a decision that no publicly-funded representation would be available to petitioner and not simply a statement from a lawyer that she personally could not proceed. Indeed, it is clear that whatever was the communication with petitioner, he did not

---

[4] The majority has added some of the pertinent facts in a footnote. *Ante,* ¶ 2 n.1.

understand the nature of the decision because he supported the withdrawal stating that "counsel has completely missed the issue at hand" and applied for replacement counsel. Later when he learned that his claim had been found without merit in some sort of review process, he claimed in a letter to the Defender General that he had been sandbagged by counsel because she had done nothing on his behalf in the course of the appeal.

¶ 28. In response to the order requiring counsel to explain the grounds for her action, counsel filed a motion for full-court review, stating for the first time that "two separate attorneys have scrutinized the case and found the claims to be without merit." Counsel never stated that she had found the appeal to be frivolous, apparently believing that it was improper for her to state directly that she believes that petitioner's case is frivolous or any other words to that effect. In a separate brief as amicus curiae, the Defender General has explained that three lawyers looked at the case. While none of the briefs say so explicitly, the decision here is actually a decision of the Defender General that he will not pay for representation by Attorney Fulcher or anyone else once the review process was completed. This is, then, a decision about a system and not about particular counsel.

¶ 29. I emphasize the latter point to directly dispute the majority's characterization of the issue as much narrower — "we are not asked to decide if Attorney Fulcher waived her right to withdraw, nor are we asked to evaluate the validity of the Defender's screening process." *Ante*, ¶ 17. I disagree with both characterizations. As to the waiver point, the majority has granted Attorney Fulcher's motion to withdraw, *ante*, ¶ 16 ("her motion to withdraw is granted"), and, in my judgment, her failure to raise the issue of withdrawal in a timely fashion should prevent grant of that motion. The timeliness of an attorney's actions is always in issue. The whole point of court oversight of withdrawal is to ensure that the interests of the client are protected. Even if I agreed that she can withdraw solely by sending a letter, I would not grant the motion to withdraw in this case.

¶ 30. The majority offers two justifications for its nonwaiver ruling: no party raises the timeliness of the request and no demonstrable prejudice has occurred. I address below why there is demonstrable prejudice. As to the former point, the only "party" who has any interest in raising the question is the client who will be left without a lawyer. Petitioner first agreed to

withdrawal because counsel had done nothing for him and he wanted counsel who, in his opinion, would provide proper representation. When he learned that he was being denied all counsel, he complained that counsel had "sandbagged" his case by sitting on it. He added that "someone is dragging their feet in this matter trying to muddy it up." Even if a pro se and semi-literate client has to specifically object to counsel's delay for this Court to protect the interest of the client, I believe he has done so here. By granting the motion to withdraw and not even addressing the timeliness of counsel's action, the majority is saying that appointed counsel can wait any length of time to decide to withdraw.

¶ 31. I think the second characterization simply ignores what the record shows has occurred here and is occurring in all these cases. More important, the majority relies on the Defender General's review process in a number of places in its opinion. Since the review process is essential to the majority decision, we should look at its validity.

¶ 32. I also take as fact something my colleagues may not, but I think is critical to the issue before us. The decision on the withdrawal motion is de facto a decision on the merits of the appeal unless something with the likelihood of a lightning strike occurs. Petitioner has tried to make his argument pro se, but it is hard to comprehend from his statements. For example, in his "brief" to this Court in seeking new counsel, he summarizes his argument why a sentence of three to eighteen years, all suspended except three to six years, is unlawful: "The unsuspended portion of a split to serve sentence becomes the minimum sentence to serve, thus there is no minimum provided for, only a six year sentence or minimum and not a 3-6 as shown." Even in a case like this where the appellee, the State of Vermont, has not filed anything in the superior court or in this Court defending on the merits, there is no serious chance that petitioner will prevail on the merits given his inability to advocate his position. I find all the arguments from the Defender General and appellate counsel about not wanting to undercut petitioner's appeal to be self-serving and theoretical. The fact is that the only real chance petitioner would have on appeal would occur if we reviewed the grounds for withdrawal, found them inadequate, and required briefing on issues we found not to be frivolous — exactly the review the Defender General opposes. As a recent commentator recognized in reviewing the use of *Anders* procedures, "[j]urisdic-

tions that have adopted the Anders procedure, as well as the opinions of practicing appellate attorneys who have submitted Anders briefs, reveal that in actual practice, the rationales and parades of horribles found in the criticisms of the Anders procedure are simply neither consistent nor true in appellate practice today." C. Yee, Comment, *The Anders Brief and the Idaho Rule: It Is Time for Idaho to Reevaluate Criminal Appeals After Rejecting the Anders Procedure*, 39 Idaho L. Rev. 143, 165 (2002).

¶ 33. As near as I can determine, the substantive issue in this case is whether petitioner is entitled to appear before the parole board after the expiration of three years from his sentencing or after six years from his sentencing. He was sentenced in May 2004, and five years have already expired since sentence was imposed. If one assumed that petitioner prevailed in his PCR proceeding and was immediately released by the parole board, all of the time following the appointment of appellate counsel represents additional time that petitioner has remained in jail. Despite this potential increased incarceration time, appellate counsel never objected to her appointment, never stated that it was conditional on an independent review, never disclosed that the review was going forward and would have to be completed before she could provide any representation, and twice stated to us that any delay was caused by having too many cases to complete the brief within the time limits. The majority says that in this case there is no "demonstrable prejudice" from the delay in filing the motion to dismiss, *ante*, ¶ 17 n.2, despite the fact that the ultimate question on appeal is whether petitioner should now have an opportunity for release from jail. The majority can make that statement only if it assumes that the appeal is frivolous, judging the merits without presentation of briefing and argument in order to decide whether petitioner can have a lawyer to file a brief and make an argument on his behalf. On that theory, counsel can wait until the case is moot, totally eliminating petitioner's opportunity to present a case, and the Court will find no prejudice to the client. I find it unconscionable that this Court would rubber-stamp a system that causes this kind of prejudice to a client, who would be much better off if there were no right to counsel in any circumstances and presented his case, however poorly, in time for a meaningful result.

¶ 34. The above is background, but colors my view of how we should decide the issues before us. It should come as no surprise,

given the above discussion, that I was the single justice that issued the order requiring counsel to file an affidavit covering three items: (1) a specification of petitioner's claims; (2) any law or argument that arguably supports such claim; and (3) a statement that counsel considers petitioner's claims to be frivolous. Contrary to the briefing, the order did not require counsel to state why she considered the petitioner's opinion to be frivolous. While I am prepared to defend these requirements, this dissent is not triggered by the majority's refusal to require an *Anders* brief, although the majority keeps beating this drum. Instead, I am responding to the majority's decision that there are *no* requirements for withdrawal beyond citing to the rules and statute, with approval of withdrawal then being automatic and nondiscretionary. This is a position even more extreme than that taken by the Defender General, and it abdicates any responsibility to protect, or even consider, the interest of the client. It is directly contrary to our withdrawal rule, and it is not supported by the statute that it supposedly implements. It is also inconsistent with the decisions in states with a comparable statute.

¶ 35. This case involves the interplay between our withdrawal rule, V.R.A.P. 45.1(f), and the statute on appointment of counsel for PCR proceedings, 13 V.S.A. § 5233(a)(3). The withdrawal rule provides "[l]eave to withdraw after the appeal has been docketed will be granted only for good cause shown and on such terms as the Court may order." V.R.A.P. 45.1(f). The majority states that the "attorney does not need this Court's permission to determine whether to represent his or her client." *Ante*, ¶ 20. On the contrary, any attorney who represents a client in this Court does need permission to stop representing the client. That is exactly what Rule 45.1(f) says.

¶ 36. Without saying so directly, the majority seems to argue that the withdrawal rule does not apply because no attorney was actually appointed in this case. Thus, the majority states that "such assignment would follow the Defender's review process and a determination by counsel that the case is not frivolous." *Ante*, ¶ 18. This statement is directly contrary to the superior court's appointment order in this case. Pursuant to that order, assignment occurred on December 8, 2007, and not when the secret review process occurred, whenever that was. Indeed, under the majority's theory, counsel never had to move to withdraw because she was never assigned to represent petitioner. The majority's

theory might make sense if the Defender General or Attorney Fulcher had said at the outset that they did not accept the assignment until they did an internal review, but instead they were silent.

¶ 37. The majority also holds that the withdrawal rule is inconsistent with the governing statute, that provides that a needy person has the right:

> To be represented in any other postconviction proceeding which may have more than a minimal effect on the length or conditions of detention where *the attorney* considers the claims, defenses, and other legal contentions *to be warranted by existing law or by a nonfrivolous* argument for the extension, modification, or reversal of existing law or the establishment of new law.

13 V.S.A. § 5233(a)(3), 2003, No. 157 (Adj. Sess.), § 10 (eff. June 8, 2004) (emphasis added). As the majority states, the statute was amended in 2004 in response to our decision in *In re Gould*, 2004 VT 46, ¶ 13, 177 Vt. 7, 852 A.2d 632. The amendment added language conditioning representation on the attorney's determination that the case presents a meritorious issue. The purpose and effect of the amendment clearly was to ensure that the holding of *Gould* no longer controls; once the court has granted a motion to withdraw based on the absence of a meritorious claim, it need not appoint new counsel based solely upon the needy person's assessment that representation is warranted or appropriate.

¶ 38. Nothing in the amendment or its underlying history, however, reveals a legislative intent to evade the venerable — and indispensable — rule requiring judicial review and approval before counsel may withdraw his or her services in a case pending in the court. As courts have long observed, the rule is grounded in concerns for ensuring the efficient administration of justice as well as the effective representation of litigants. As explained by one court, "the inherent power of the trial court to control its calendar and conduct its business in the public interest is nowhere more apparent than when counsel — whether retained or appointed — seeks to withdraw from representation of a defendant." *State v. Batista*, 492 N.W.2d 354, 358 (Wis. Ct. App. 1992). "It is a cardinal rule," the same court continued, "that once representation is undertaken, counsel cannot walk away from the defendant or from the case. If counsel wishes to be released from responsibility to

the defendant, counsel must request the trial court to be relieved of his or her obligation to represent the defendant." *Id.* (citation omitted); see also *United States v. Curry*, 47 U.S. (6 How.) 106, 111 (1848) ("No attorney or solicitor can withdraw his name, after he has once entered it on the record, without the leave of the court."); *Brandon v. Blech*, 560 F.3d 536, 538 (6th Cir. 2009) (noting that a court "may forbid withdrawal if it would work severe prejudice on the client or third parties"); *Sobol v. Dist. Ct. of Arapahoe County*, 619 P.2d 765, 767 (Colo. 1980) (stating that an "attorney's withdrawal must be undertaken in a proper manner, duly protective of his client's rights and liabilities," and that the court's "inherent power" to control an attorney's appearance "derives from its responsibility to conduct its business efficiently, effectively, and fairly"); *In re Rosenfeld*, 157 Vt. 537, 541, 601 A.2d 972, 974 (1991) (noting the rule of professional responsibility requiring that "a withdrawing lawyer . . . take reasonable steps to avoid foreseeable prejudice to the rights of the client" (citation omitted)). As in all jurisdictions, therefore, our rules provide that counsel seeking to be relieved of his or her obligations must file a formal motion to withdraw, V.R.C.P. 79.1(f), V.R.A.P. 45.1(f), which is then committed to the sound discretion of the trial court to grant or deny based on a showing of good cause under all of the attendant circumstances. *Cameron v. Burke*, 153 Vt. 565, 573, 572 A.2d 1361, 1366 (1990); *Chaker v. Chaker*, 147 Vt. 548, 549-50, 520 A.2d 1005, 1006-07 (1986).[5]

¶ 39. As noted, nothing in the language or the legislative history of the amendment to § 5233 reveals an intent to overturn this well-settled process. The history of the amendment shows that it was appended to a larger bill (S.227) dealing with sex-offender registration and notification. In testimony before the House Committee on the Judiciary, the Defender General observed that the number of PCR filings had increased exponentially over the last ten years, and opined that truly frivolous petitions should not be allowed to divert scarce resources from meritorious cases. The Defender General explained that the Prisoner Rights Office had already instituted an internal review process for all PCR referred

---

[5] Contrary to the majority's statement that this dissent treats the case as if petitioner had a constitutional right to counsel and that it relies "almost exclusively on constitutional right-to-counsel cases," *ante*, ¶ 17, our law with respect to withdrawal applies equally to cases with or without assigned counsel and irrespective of the basis for any assignment.

by the courts to screen out those it considered frivolous, and that the proposed amendment was essentially designed to "ratify[] the current process." Sex Offender Registration and Community Notification: Hearing on S.227 Before the House Comm. on the Judiciary, 2003-2004 Bien. Sess. (Vt. April 21, 2004) (testimony of Matthew Valerio). At that time, and at all times thereafter, the "process" naturally included counsel's obligation to seek and obtain court approval for withdrawal.

¶ 40. Thus, apart from removing an indigent's right to demand representation regardless of the appointed attorney's judgment that the petition is frivolous, the language and history of the amendment reveal no underlying legislative intent to alter the current system for the withdrawal of counsel. Certainly there is no evidence of an unstated intention to overturn a discretionary authority that courts have long exercised in the interest of ensuring the effective representation of litigants and the efficient administration of justice.

¶ 41. Although, as the majority indicates, some states have adopted statutes similar to § 5233(a)(3), I can find none that have abandoned a review process for motions to withdraw in favor of rubber-stamp approval. While some states have held that they will not impose the procedures in *Anders*, none have held that withdrawal is automatically allowed if the lawyer simply cites to the statute and the Rules of Professional Conduct, without even a client-specific representation that the lawyer would violate the law and the ethical rules by extending representation to the client.

¶ 42. Two precedents from courts in states with a similar statute are instructive. The first, *People v. Demarest*, 801 P.2d 6 (Colo. App. 1990), is from a jurisdiction cited in the majority opinion and is essentially the same as the case before us. In *Demarest*, a public defender moved to withdraw from an appeal of a denial of a PCR petition under a statute that conditioned the right of representation on the lawyer being "satisfied first that there is arguable merit to the proceeding." *Id.* at 7. The lawyer argued that she was not "satisfied" that the case had arguable merit. The court noted it had discretion in addressing the motion and that "counsel who undertakes to conduct an action impliedly stipulates that he will prosecute it to a conclusion." *Id.* The court reasoned and held:

> There is no indication that counsel objected to the trial court's order of March 16, 1989, appointing counsel on

appeal, nor has counsel taken any action whatsoever resisting appointment until February 2, 1990. Since counsel has continued her appellate representation of defendant for some eleven months, we conclude that, under these circumstances, counsel has undertaken the appeal and cannot now be allowed to abandon representation.

*Id.* At a minimum, we should follow *Demarest* and deny counsel's motion to withdraw for the reasons stated in that decision. By the representations in her motions to this Court and her inaction over an extended period of time, counsel has waived any right she had to abandon representation of petitioner.

¶ 43. The second case, *Griffin v. State*, 18 P.3d 71 (Alaska Ct. App. 2001), suggests a further answer to the real issue here — that is, the validity of a process under which lawyers, and the public defender system, withdraw based on their unreviewable evaluation of the merits of the client's case. Alaska adopted a statute similar to that in Vermont for screening of PCR proceedings. Like the Vermont statute, the Alaska statute purports to condition representation on an unreviewable, subjective evaluation of merit by the assigned counsel. Recognizing that the judge in the PCR proceeding ultimately has to determine the merit of the petition, the court added a nonstatutory requirement that the lawyer explain why the petition lacked merit such that the lawyer could withdraw. *Id.* at 77. The court explained the rationale for its decision as follows:

> In order for the court to perform its role under Rule 35.1(f)(2) — and thereby fulfill its duty to make sure that indigent litigants do in fact receive zealous investigation and presentation of any colorable claims for post-conviction relief — the attorney seeking to withdraw from the case must provide the court with a full explanation of all the claims the attorney has considered and why the attorney has concluded that these claims are frivolous. Only then can the court meaningfully assess and independently evaluate the attorney's assertion that the petitioner has no arguable claim to raise.

*Id.* In later discussion, the court added that it acted, in part, "to avoid the constitutional problems that would arise if we interpreted [the statute] narrowly." *Id.* In order to enforce Appellate

Rule 45.1(f), I would also follow *Griffin* for the reasons stated above.

¶ 44. If this were a decision solely about the withdrawal of one lawyer, I would end here. But, as I state above, the argument and briefing disclose that the issue is really about whether petitioner has a publicly-funded right to counsel in this case. I repeat that this determination is made by the Defender General in a secret, unreviewable process with only the result, if it is adverse, disclosed to this Court and to the client.

¶ 45. The Defender General has given a number of justifications for responding summarily to this Court, but none for responding in this way to petitioner. In fact, the assigned lawyer and the Defender General could fully disclose their review of the merit of petitioner's case to petitioner, without disclosing this information publicly or to this Court. This would give petitioner an opportunity to contest the decision and seek review in this Court under Rule 45.1(f), with the necessary disclosure that if petitioner desires effective review the information would be released to this Court. Under such a procedure, it would be the client, not the lawyer, who would decide what is in the best interest of the client — exactly where the responsibility should be placed.

¶ 46. I do not think that the current secret, unreviewable process is consistent with due process of law under the Fourteenth Amendment. As the court recognized in *Griffin*, the constitutional problem arises from withdrawal of an important right with no review process. In determining what process is due, we have generally followed the three-factor analysis from *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976), balancing the interest of the individual in the governmental benefit involved, the risk of erroneous determination under the procedures used, and the government's interest in the process used. See *LaFaso v. Patrissi*, 161 Vt. 46, 51-52, 633 A.2d 695, 698-99 (1993). I will not go through the factors in detail in this dissent beyond stating that I believe that all three factors require us to impose some process on the act of withdrawal to protect the interests of the client. As I said above, petitioner's interest is in having any possibly effective presentation of his case, the question of merit is ultimately one of professional judgment on which assessments could differ, and the cost of disclosing the reasons for withdrawal to the client, and to the court if the client desires, are low. I would welcome a full discussion of these interests in a direct challenge to the review process that led to the decision before us.

¶ 47. In summary, there is no justification for defaulting on our responsibility to protect a client in a case pending before us from unjustified abandonment of the lawyer's representation. I would deny the motion to withdraw until we fulfill this responsibility.

¶ 48. **Johnson, J.,** dissenting. To provide petitioner with competent and effective assistance of counsel and to preserve this Court's role as protector of his right to counsel, this Court should deny counsel's motion to withdraw and require her to file a brief on petitioner's behalf. Neither the majority's solution of rubber-stamping the attorney's conclusion that the case lacks merit, nor Justice Dooley's suggestion to require an *Anders*-type affidavit from counsel adequately resolves the conflict between indigent petitioner's need for effective and zealous representation and counsel's own professional obligation to refrain from bringing frivolous cases. While I concur with the majority's conclusion that an *Anders*-like procedure is not constitutionally required or particularly effective in protecting an indigent litigant's rights, I cannot agree with the majority's holding that assigned counsel may withdraw at any point in the course of representation based solely on counsel's own, unreviewable conclusion that the case is not warranted by existing law or nonfrivolous argument. The grave consequences of a post-conviction proceeding and the critical requirement of robust representation at this proceeding require more. To solve this problem, I would instead require counsel, once appointed, to remain in the case and to advance her client's claims notwithstanding that she deems them to be without merit. Because I would deny counsel's motion to withdraw, I dissent.

¶ 49. I begin by outlining the process of assigning counsel to indigent persons, which involves provisions of both the Public Defender Act (PDA) and our own administrative rules. The PDA entitles a "needy person" to counsel in a post-conviction relief (PCR) proceeding "which may have more than a minimal effect on the length or conditions of detention." 13 V.S.A. § 5233(a)(3). The determination of whether a person qualifies as needy is determined by "the clerk of the court." A.O. 4, § 5(a). Based on an application demonstrating financial need, the court notifies the public defender if a person qualifies for counsel, and either that office or court-appointed conflict counsel is assigned to the case. *Id.* § 3. Petitioners must apply separately for counsel on appeal.

¶ 50. The question of what types of PCR petitions merit counsel arose in *In re Gould*, 2004 VT 46, 177 Vt. 7, 852 A.2d 632, where

we addressed the question of whether a petitioner was entitled to replacement counsel after the trial court had granted previous counsel's motion to withdraw. We concluded that the petitioner was entitled to new counsel under the existing language of the statute, which granted counsel in proceedings "the attorney or the needy person considers appropriate." *Id.* ¶ 19 (quotation and emphasis omitted). Following our decision in *Gould,* the Legislature amended the statute to direct that under the PDA indigent petitioners are granted counsel in a PCR "where the attorney considers the claims, defenses, and other legal contentions to be warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." 13 V.S.A. § 5233(a)(3). The Legislature appeared to intend to limit representation to nonfrivolous cases, but the Legislature did not remove the courts from involvement in both the assignment and withdrawal of attorneys.

¶ 51. The majority construes the amended language of § 5233(a)(3) as authorizing counsel to withdraw from a case at any point when the attorney decides that the client's claims are frivolous. Under the majority's interpretation of the statute, to effectuate this withdrawal, counsel must simply notify this Court of her assessment and the Court will grant counsel's motion. I find no support for this view in the language of the statute. The statute does not mention withdrawal and, as Justice Dooley recounts, the legislative history indicates that the statute was enacted to address the question of appointment, not withdrawal. Indeed, the procedural rules for both the trial court and our appellate court give the courts full discretion on motions to withdraw. See V.R.C.P. 79.1(f); V.R.A.P. 45.1(f) (explaining that after an appeal is docketed, leave to withdraw is granted "only for good cause shown"); see *Cameron v. Burke,* 153 Vt. 565, 573, 572 A.2d 1361, 1366 (1990). Despite the majority's assertion otherwise, there is no clear legislative intent underlying § 5233 to divest this Court of its discretionary authority over motions to withdraw. Nothing in the language or the legislative history of § 5233 demonstrates that the Legislature intended to supplant the court's traditional role in overseeing motions to withdraw. Thus, I decline to read that intent into the statute. *State v. O'Neill,* 165 Vt. 270, 275, 682 A.2d 943, 946 (1996) ("It is inappropriate to read into a statute something which is not there unless it is *necessary* in order to make the statute effective.").

¶ 52. Moreover, I agree with Justice Dooley that it is an abdication of our judicial role to certify an attorney's withdrawal from a case without ever independently examining the basis for counsel's assertion that the case is frivolous. This Court generally assumes that counsel does not make false representations, but there is nothing distrustful about engaging in an independent assessment of the evidence, and this Court routinely conducts its own research and analytical investigation before deciding if counsel's conclusions are correct. My hesitation in blindly accepting counsel's assertion that her client's case is frivolous is not grounded in any inherent belief that counsel is intentionally misleading this Court; rather, I am concerned about this Court's responsibility to ensure that indigent persons receive competent and complete representation. Even in civil cases involving much less than what is at stake in PCR proceedings, we require counsel to do more than simply state that he or she wishes to withdraw. See *Chaker v. Chaker*, 147 Vt. 548, 549-50, 520 A.2d 1005, 1006-07 (1986) (examining whether circumstances meet standard of good cause to withdraw).

¶ 53. The majority fails to explain how its decision can be reconciled with this Court's responsibility for, and discretion in, evaluating motions to withdraw. The majority prefers to treat this case as one involving appointment rather than withdrawal because it contends that in that context the attorney has full discretion. To do so, the majority concludes that petitioner's attorney was involved based wholly on a "pro forma referral." *Ante*, ¶ 7. Therefore, the majority concludes that there was no real assignment of counsel, *id.* ¶ 18, and counsel does not require "this Court's permission to determine whether to represent his or her client." *Id.* ¶ 20. The majority's assumption ignores the bare facts. However ministerial, it is undisputed that counsel was assigned to petitioner by the court; to withdraw, counsel must request permission from this Court. If there is indeed some "Catch-22," *ante*, ¶ 19, created by the current system, it is up to the Legislature to redesign the appointment process, rather than for this Court to legislate a change that it infers should exist. Moreover, in this case, it trivializes counsel's involvement in petitioner's case to say that her representation was wholly a formality. Counsel represented petitioner for eight months, filed documents on his behalf and requested extensions of time for preparation of his case. Under these circumstances, I conclude that her representation

was real and this Court continues to have a responsibility to evaluate her withdrawal.

¶ 54. The Defender General asserts in its brief that the merit of a case is determined by an internal screening process involving separate review by three attorneys. This information is supposed to reassure this Court that the attorney's withdrawal is warranted. It does not, however, alleviate my concerns. Whatever the process the Defender General has designed for screening cases, it is not the court's process, and it is hidden from our view. If we are to certify an attorney's withdrawal, then we must independently evaluate the reasons for the withdrawal because, in essence, allowing counsel to withdraw is a predetermination by this Court that petitioner's case is frivolous. While there may be strong policy reasons for limiting the right to counsel in PCR proceedings, the statute does not answer the question of when and how an appointed attorney may withdraw because she deems the claims frivolous. I express no opinion on Justice Dooley's contention that the Defender General's "secret, unreviewable process" for screening cases is not consistent with due process of law under the Fourteenth Amendment. *Ante*, ¶ 46. Because this appeal involves the issue of withdrawal and not assignment of counsel, the legality of such a process is not before us. I conclude only that as far as the Defender General's screening process relates to attorney withdrawal, it cannot dictate to the court that an attorney's withdrawal is warranted. As long as the courts are involved in the process, we must be able to ensure that the grounds for withdrawal are substantiated before granting the motion.

¶ 55. Thus, the question remains of how to evaluate counsel's request to withdraw. Justice Dooley contends that the best option is to require counsel to file an affidavit specifying petitioner's claims, outlining the supporting law, and affirming that the claims are without merit, modeled upon the requirements set out by the Supreme Court of the United States in *Anders v. California*, 386 U.S. 738 (1967). I understand the laudable goals behind this process, but conclude that it is administratively difficult, places the court in an advocacy rather than judicial role and undermines the attorney-client relationship. See *Gale v. United States*, 429 A.2d 177, 183 (D.C. 1981) (Ferren, J., dissenting) ("Motions to withdraw under *Anders* . . . are agonizing for the lawyer, awkward for the judge, and perceived as collusive by the appellant.").

¶ 56. First, although it is intended to save time, *Anders* is a time-consuming effort for both counsel and the court. See *Commonwealth v. Moffett*, 418 N.E.2d 585, 590 (Mass. 1981) (criticizing *Anders* process as "cumbersome and impractical" and "insufficiently responsive both to the position of the indigent and to the ethical concerns of appointed counsel"). Appointed counsel must first search the record for possible claims. Then counsel must prepare a brief outlining possible issues and explaining why those issues lack merit. "*Anders* in practice invites counsel who sees no appellate issue to file either a short withdrawal memorandum . . . or a comprehensive withdrawal brief." *Gale*, 429 A.2d at 181 (Ferren, J., dissenting). In either case, substantial time is spent either by counsel researching and presenting a comprehensive brief or by the court when counsel files a summary brief. *Id.*; see *State v. McKenney*, 568 P.2d 1213, 1214 (Idaho 1977) (per curiam) ("[L]ess of counsel and the judiciary's time and energy will be expended in directly considering the merits of the case in its regular and due course as contrasted with a fragmented consideration of various motions, the consideration of which necessarily involves a determination of merits."). Furthermore, if the court concludes that some legal points arguably have merit, then more time is taken by reassigning counsel and having the case briefed.

¶ 57. Second, *Anders* places counsel and the courts in unsuited roles. When counsel briefs a case against his client, it requires the courts to assume an adversarial rather than judicial role by inquiring as to whether the record supports any credible arguments. See *Moffett*, 418 N.E.2d at 590-91. In evaluating an *Anders* brief, the court must independently examine the record to determine if any claims exist that are nonfrivolous. This role reversal thus "forces either the court to undertake the role of the lawyer, or the lawyer to undertake the role of the court," and "does not well serve the administration of justice." *Gale*, 429 A.2d at 182 (Ferren, J., dissenting). Allowing a petitioner's claims to be evaluated outside of the adversarial process also compromises a litigant's rights. See *Gould*, 2004 VT 46, ¶ 21 (explaining that justice is best served through the adversarial process).

¶ 58. Third, the attorney-client relationship is compromised because defense attorneys are required to brief the case against their clients. Thus, petitioners are "sandbagged when the counsel appointed by one arm of the Government seems to be helping

another arm to seal his doom." *Id.* ¶ 20 (quotation and alterations omitted); see *Moffett*, 418 N.E.2d at 590 (rejecting *Anders* process as "insufficiently responsive both to the position of the indigent and to the ethical concerns of appointed counsel"). *Anders* places counsel in a difficult position because there is a conflict between counsel's duties to his client for zealous representation and his responsibilities to the court to be truthful and honest. *McKenney*, 568 P.2d at 1214-15.

¶ 59. In PCR proceedings, *Anders* is even more burdensome to courts than in direct appeals. In a PCR proceeding, it can be very onerous to search the record for error because the record is by definition boundless. It "includes trial counsel's notes, police reports, witness interviews, and miscellaneous materials which may be voluminous in quantity and virtually unintelligible in form." *Hertz v. State*, 755 P.2d 406, 408-09 (Alaska Ct. App. 1988), *superseded by rule as stated in Griffin v. State*, 18 P.3d 71, 72 (Alaska Ct. App. 2001). While the record in an appeal is a finite set of facts, in PCR proceedings claims of error are generally supported by facts outside the trial court record and may require a diligent attorney to review "documents from police files, interview or depose witnesses, and fully interview the petitioner." *Griffin*, 18 P.3d at 74. If an attorney asserts that no nonfrivolous issues exist, then the court faces the "arduous task" of reviewing this claim by searching through these items on its own. *Id.* This process requires the court to assume an "inquisitorial role" more akin to advocate than to the court's proper adjudicative function. *Id.*

¶ 60. In addition, the *Anders* procedure closely resembles our traditional way of resolving PCR petitions and therefore has little extra time savings. In a normal PCR proceeding, the petitioner submits a motion outlining errors in his conviction and sentence, and the trial court reviews the brief and may dismiss the petition if it lacks merit. 13 V.S.A. §§ 7132, 7133. In the *Anders* situation, the petitioner's attorney must still set out the petitioner's claims, but in addition must explain why they lack merit. Thus, the court is required to make a similar determination in both cases, but in *Anders*, counsel becomes an amicus of the court rather than an advocate for her client. *Griffin*, 18 P.3d at 74.

¶ 61. To avoid these problems, I propose an alternative solution. Once an attorney is assigned to represent a petitioner in an initial PCR proceeding, I would not entertain any motion to withdraw

based on counsel's assertion that the case lacks merit. Instead, counsel would be required to consult with her client and to submit a brief advancing the client's claims to the best of her ability. This suggestion is hardly novel. Several states do not allow counsel to submit an *Anders* brief to withdraw in direct appeals. See, e.g., *Huguley v. State*, 324 S.E.2d 729, 731 (Ga. 1985); *McKenney*, 568 P.2d at 1214 (holding that once counsel is appointed to represent an indigent client in a criminal appeal, no withdrawal will be permitted on the basis that the appeal lacks merit); *Moffett*, 418 N.E.2d at 591 (appointed counsel may not withdraw solely on ground that the appeal is frivolous); *State v. Cigic*, 639 A.2d 251, 254 (N.H. 1994).

¶ 62. The ABA Standards for defense counsel on appeal also recommend that appellate counsel should not seek to withdraw from a case based solely on her determination that the appeal lacks merit. See ABA Standards for Criminal Justice, *Defense Function* Standard 4-8.3 (3d ed. 1993). The Standards advise counsel to carefully reflect on whether an appeal is frivolous because "[i]n some instances, even when the existing doctrine does not support a case for reversal on appeal, there may be a sound basis for arguing for an extension, modification, or reversal of exiting law. In such a case, the appeal ground is not frivolous." *Id.* cmt. The Standards explain that it is inappropriate for counsel to submit an *Anders*-type brief because counsel is forced to act as an adviser to the court. Instead, counsel should prosecute the appeal as best as she can without deceiving or misleading the court. *Id.*

¶ 63. This process is utilized in New Jersey for PCR proceedings, where the post-conviction rule states: "Assigned counsel may not seek to withdraw on the ground of lack of merit of the petition. Counsel should advance any grounds insisted upon by defendant notwithstanding that counsel deems them without merit." New Jersey Rules of Court, Rule 3:22-6(d). The New Jersey Supreme Court has explained that in these cases an attorney must communicate with her client and then "fashion the most effective arguments possible." *State v. Rue*, 811 A.2d 425, 437 (N.J. 2002) (quotation omitted). The attorney must "advance the claims the client desires to forward in a petition and brief and make the best available arguments in support of them," but is not required to "engage in expository argument" and may stand on the brief. *Id.* at 437. In this posture, counsel is not required to fabricate evidence or claims, but must file a brief that argues the

petitioner's case as well as possible. See *Cigic*, 639 A.2d at 254. If the appeal is truly frivolous counsel's summary of the facts and law will make that obvious. *Id.* In this way, the court, rather than counsel, becomes the ultimate arbiter of the petition's merit. See *Hertz*, 755 P.2d at 409.

¶ 64. While this Court has not addressed the question directly, as a practical matter, we do not entertain *Anders* motions to withdraw in direct appeals. See M. Warner, *Anders in the Fifty States: Some Appellants' Equal Protection is more Equal than Others'*, 23 Fla. St. U. L. Rev. 625, 651 n.212 (1996) (noting that Vermont is one of several states that have not used *Anders* motions in direct appeals). In all cases, counsel submits a brief presenting the client's claims as best as counsel is able, and we evaluate the merit of those claims. There is no practical reason why we should treat PCR proceedings differently from direct appeals in deciding whether to require an *Anders* brief. Frivolous claims are just as likely to appear in appeals from a conviction as in appeals from a PCR proceeding.

¶ 65. Adopting this procedure would have several advantages. It would eliminate the need for this Court to blindly certify an attorney's withdrawal without independently examining the merits of the petitioner's case. It would also eliminate the *Anders*-associated problems. There would be no need for counsel to delineate the shortcomings of her client's case. Moreover, instead of independently evaluating the merits of a petition based on counsel's affidavit, the court would have the benefit of considering the merits of the petition through the adversarial process. This would better serve the client and the court. See *Cigic*, 639 A.2d at 253-54 (explaining that prohibiting withdrawal preserves the integrity of the attorney-client relationship and allows the appellate court to directly review merits of case); see Warner, *supra*, at 666 ("By refusing to allow counsel to withdraw, appellate courts are better served because they will receive a brief on the merits, regardless of the issues.").

¶ 66. As amicus, the Defender General argues that it is necessary to allow attorneys to withdraw in frivolous cases to save its limited resources for cases with merit. I recognize that requiring attorneys to continue representation does not provide the resource savings that the Defender General seeks. As explained above, however, I cannot simply allow withdrawal without some judicial oversight of the decision. Moreover, I submit that once an

attorney has researched and reviewed a client's case sufficiently to determine that the claims are without merit, requiring the attorney to submit a brief would not require onerous additional amounts of time. See *Hertz*, 755 P.2d at 409. In addition, whatever time is spent preparing a brief would not exceed the time spent on an *Anders*-type affidavit. See *Mosley v. State*, 908 N.E.2d 599, 608 (Ind. 2009) ("Requiring counsel to submit an ordinary appellate brief the first time — no matter how frivolous counsel regards the claims to be — is quicker, simpler, and places fewer demands on the appellate courts."). Certainly in a case, such as this one, where counsel has accepted appointment and has represented an indigent for a significant period of time, it is particularly prejudicial to the indigent client to allow counsel's motion to withdraw. See *People v. Demarest*, 801 P.2d 6, 7 (Colo. App. 1990) (denying counsel's motion to withdraw under court's discretionary power where counsel represented petitioner for eleven months prior to moving to withdraw). The better approach is to deny the motion to withdraw and to require counsel to file a brief.

¶ 67. Finally, I briefly address the Defender General's concern about placing counsel in an ethical dilemma. Counsel is obligated under the Rules of Professional Conduct to "not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." V.R.Pr.C. 3.1. In addition, when representation would violate an ethical rule, the attorney is instructed to withdraw. V.R.Pr.C. 1.16(a)(1). Thus, the Defender General asserts that counsel must withdraw when she deems her client's case to be frivolous. See *Gould*, 2004 VT 46, ¶ 23 (noting that counsel may fear entanglement with professional responsibility board where few viable issues are presented in a PCR petition). I recognize the real and serious responsibility that lawyers have not to advance frivolous law suits, but I think that this ethical dilemma is largely overstated.

¶ 68. To begin, I emphasize that the actual chance that an attorney will be forced to bring an appeal based on a truly frivolous claim is extremely rare. As other courts have stressed, the standard of frivolousness is a high one. See, e.g., *Cigic*, 639 A.2d at 253 (defining when an action is frivolous). "There is a significant difference between making a weak argument with little

chance of success . . . and making a frivolous argument with no chance of success." *Khan v. Gallitano*, 180 F.3d 829, 837 (7th Cir. 1999); see *Ramos v. State*, 944 P.2d 856, 858 (Nev. 1997) (per curiam) ("An action is not frivolous even though the lawyer believes that the client's position will ultimately not prevail."). Even in cases where counsel sees no grounds for reversal under current precedent, a good faith argument can be made to extend, modify or reverse existing law. *Cigic*, 639 A.2d at 253. Thus, the actual number of cases that would result in counsel being placed in this ethical bind would be very small. See Restatement (Third) of the Law Governing Lawyers § 110 cmt. b (2000) (noting that disciplinary enforcement against frivolous litigation is rare).

¶ 69. Furthermore, to protect an attorney in the extraordinary situation where she is forced to bring a frivolous claim, this Court could create an exception to the professional conduct rule under its authority over attorney discipline. Vt. Const. ch. II, § 30 (granting Supreme Court administrative control over discipline of attorneys); see *In re Farrar*, 2008 VT 31, ¶ 5, 183 Vt. 592, 949 A.2d 438 (mem.) (recognizing that this Court has discretion in sanctioning attorneys); see also V.R.Pr.C. 1.16(c) (stating that a lawyer must continue representation if ordered to do so, even if there is good cause for terminating). Thus, attorneys would be freed from any possible ethical violation. Three other states, which have rejected *Anders* and do not allow counsel to withdraw in a criminal appeal, have created an exception to the ethical prohibition on raising frivolous issues. See *Ramos*, 944 P.2d at 858; *Cigic*, 639 A.2d at 254; *Huguley*, 324 S.E.2d at 731.

¶ 70. This exception would not undermine the purposes behind the rule on bringing frivolous claims, which are to prevent harassment of the opposition and to avoid wasting judicial resources. J. Duggan & A. Moeller, *Make Way for the ABA: Smith v. Robbins Clears a Path for Anders Alternatives*, 3 J. App. Prac. & Process 65, 101 (2001).

> The opposition — the state or federal government — incurs additional expense by being required to respond to a frivolous argument, but this hardly rises to the level of the harassment the ethical rule targets. In addition, the court's resources are not being abused because, one way or another, the court will have to review the issues.

*Id.* Ultimately, I believe that it is more important to preserve an indigent's right to effective counsel than to avoid having counsel

continue representation because of a perceived ethical problem. See Warner, *supra*, at 667 ("Moreover, in the hierarchy of rights and obligations under our Constitution, the preservation of the right to counsel must have a higher priority than the nonconstitutionally based ethical dilemma that may arise occasionally for the attorney who finds no arguable error in an appeal."). Resolving claims through the adversarial system is the best way to ensure effectiveness of counsel. See *id.* at 662.

¶ 71. In summary, I disagree with the majority's decision to grant counsel's motion to withdraw based solely on her assertion that the petition is without merit and, thus, to leave petitioner without counsel to advance his PCR claims. Instead, I would deny the motion to withdraw and require counsel to file a brief on her client's behalf.