In re Brian Pelletier, No. 234-4-09 Wrcv (Eaton, J., Mar. 13, 2012)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT

SUPERIOR COURT                                    CIVIL DIVISION
Windsor Unit                                      Docket No. 234-4-09 Wrcv


In re Brian Pelletier


Decision on State's Motion for Summary Judgment


Petitioner Brian Pelletier contends that his defense attorney provided ineffective assistance of counsel after sentencing by failing to advise him of his right to appeal from the contested sentencing. At issue now is whether the applicable standard of review requires a showing that petitioner is reasonably likely to prevail on the merits of the appellate issue that he would raise if given an opportunity to take a direct appeal from the sentencing order.

The following background facts are relevant to the state's motion for summary judgment. Petitioner was arrested in May 2004 following a serious incident of domestic violence and charged with six offenses including attempted murder. He was represented by defense counsel Kevin Griffin, Esq., who negotiated a resolution in which petitioner would plead guilty to lesser charges of attempted manslaughter, unlawful restraint, and unlawful trespass. No agreement was reached as to the length of the sentence that was imposed. A presentence investigation was therefore prepared and the matter was set for a contested sentencing.

At the sentencing hearing, the state recommended an overall sentence of 26 to 28 years split with 20 years to serve. Attorney Griffin then presented extensive information about petitioner's psychological history and childhood history of abuse, and argued for a lesser sentence that would allow for programming and supervision. After considering this information, the court sentenced petitioner to 25 to 28 years split with 16 years to serve—a sentence that was between the recommendations of the two parties and within the lawful range. In explaining the rationale behind the sentence, the judge made the following statement with respect to her consideration of petitioner's arguments relating to his post-traumatic stress disorder:

> Along the way, [petitioner] had opportunities to try to deal with that terrible childhood, through counseling and the like and for whatever reason [he] was unable to do so. But the fact that it was so long in the past and that [the victims] had no part in it, does sort of lead to a conclusion that *it cannot mitigate, as much as Mr. Pelletier would like it to, his conduct on this day in question.*

After the pronouncement of the sentence, the state concedes for purposes of this motion only that Attorney Griffin did not consult with petitioner regarding the availability of an appeal from the sentencing order. It is furthermore undisputed that no direct appeal was taken.

Petitioner then filed for post-conviction review. At that time, attorney Charles Martin, Esq., reviewed the sentencing transcript and determined that (1) petitioner could present a non-frivolous argument that the sentencing judge erred by refusing to consider petitioner's mental-health history as a mitigating circumstance, (2) proper consideration of the mitigating evidence might have further lessened petitioner's sentence even though the sentence imposed was within the lawful range of sentences, and (3) Attorney Griffin provided ineffective assistance of counsel by failing to advise petitioner of his right to pursue an appeal on these grounds.

The state argues that the sentencing judge *did* consider the mitigating evidence but simply gave it less weight than petitioner wanted. The state therefore argues that post-conviction relief should not be granted here because there is no reasonable probability that petitioner would prevail on the merits of his appellate claim. In opposition, petitioner argues that his claim has merit, but more importantly, petitioner argues that he does not need to show a reasonable likelihood of success on the merits of his appeal in order to obtain post-conviction relief. He argues instead that post-conviction remedies are *per se* available upon a showing that a defense attorney failed to advise his client regarding appellate rights.

Neither party has stated the standard of review correctly. The state's arguments are foreclosed by two existing Vermont cases holding that post-conviction courts should *not* consider the merits of the petitioner's appellate claim when determining whether counsel's failure to perfect an appeal was of "prejudicial dimension," but rather that PCR courts should grant relief "unless an appeal would be patently frivolous and without a prayer of a chance of success." *In re Savo*, 139 Vt. 527, 529 (1981) (per curiam); *In re Rebideau*, 139 Vt. 530, 530 (1981) (per curiam). On the other hand, petitioner's cases involving the availability of relief in these circumstances without *any* showing of prejudice were expressly overruled by *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). The correct standard requires a more-careful review of the particular facts of the case, as follows.

"The two-part standard for evaluating an ineffective-assistance-of-counsel claim is essentially equivalent under the United States and Vermont constitutions." *In re Russo*, 2010 VT 16, ¶ 16, 187 Vt. 367 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). "The first prong of this test is an inquiry into the reasonable competence of the lawyer as measured by the prevailing standards in the conduct of the defendant's case." *Russo*, 2010 VT 16, ¶ 16 (quotations omitted) (citing *In re Pernicka*, 147 Vt. 180, 182–83 (1986)). In making this assessment, courts must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690. "The second prong of the test evaluates whether, if counsel's performance did fall below the objective standard, such failure created a reasonable probability that effective counsel would have produced a different outcome." *Russo*, 2010 VT 16, ¶ 16 (quotations and citations omitted). "A PCR court making this inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors." *Id*. (quotations omitted).

In *Roe v. Flores-Ortega*, 528 U.S. 470 (2000), the Supreme Court of the United States explained the application of the *Strickland* standard to claims that a defense attorney failed to determine his client's wishes with respect to an appeal. First, the *Flores-Ortega* court rejected

the propositions that (1) defense attorneys *must* discuss the possibility of an appeal with the defendant in *every* case, and (2) failure to do so is "*per se* deficient." *Id*. at 478 (abrogating, e.g., *Lozada v. Deeds*, 964 F.2d 956 (9th Cir. 1992)). Although the *Flores-Ortega* court acknowledged that the better practice is for defense attorneys to consult with their clients in every case about the possibility of an appeal, the court declined to elevate this practice to a constitutional rule on the grounds that the performance inquiry must focus on whether counsel's assistance was reasonable in a given case, considering all the circumstances. *Id*. at 479–80.

Instead, the *Flores-Ortega* court held that "counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id*. at 480. In making this determination, courts should take into account all the information that was known to defense counsel at the time, including whether the conviction followed from a trial or from a guilty plea ("both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings"), whether the defendant received the sentence bargained for, whether the sentence was contested, and whether the plea expressly reserved or waived some or all of the appeal rights. "Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal." See *id*. at 480–81 (acknowledging that the duty to consult will arise in "the vast majority of cases").

If the petitioner shows that counsel had a duty to consult with him about an appeal and that counsel failed to do so, the petitioner must still show prejudice from counsel's deficient performance. *Flores-Ortega*, 528 U.S. at 484. The specific nature of this showing is that the petitioner must show "that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Id*. For the most part, the showing can be made upon the same evidence that was used when determining whether counsel had a duty to consult, such as by showing that a reasonable defendant would have appealed because there was a specific, non-frivolous argument to be made, or by showing that this particular defendant had expressed a desire to appeal. See *id*. at 485–86 (explaining that in theory the two elements of the test do not overlap completely, but that in practice both elements are shown if the defendant is able to articulate a non-frivolous argument that he would raise on appeal if his right to direct appeal were reinstated). Hence, application of the federal standard results in the same bottom line as the aforementioned Vermont cases: a petitioner is entitled to post-conviction relief under *Flores-Ortega* and *Savo* if he establishes (among other possible variations of the claim) that (1) his counsel failed to consult with him about the possibility of an appeal, (2) there were non-frivolous arguments that could have been raised on direct appeal, and (3) there is a reasonable probability that he would have appealed but for counsel's deficient failure to consult.

In this case, therefore, it is unnecessary to consider whether petitioner has a reasonable likelihood of prevailing on his appellate issue; the proper standard is not merit but rather whether the appeal issue is "patently frivolous and without a prayer of a chance of success." *Savo*, 139

3

Vt. at 529. For this reason alone, the state's motion for summary judgment—which sought a ruling on the merits of petitioner's appellate issue—is denied.

Looking ahead, the court notes that the state has not conceded for purposes of the merits hearing that Attorney Griffin entirely failed to consult with his client regarding the possibility of an appeal. It is important to emphasize that if some advice was actually given, then the proper analysis would measure the effectiveness of the advice actually given rather than whether the duty to consult applied at all. *Zapata v. United States*, 193 Fed. Appx. 40, 42–43 (2d Cir. 2006). But if the evidence adduced at the merits hearing establishes that no advice was given and that the other circumstances of the case remain the same, the parties can expect the court to determine that the appellate issue is not "patently frivolous." See *In re Bailey*, 2009 VT 122, ¶ 13, 187 Vt. 176.

Assuming further that petitioner proves his claim of ineffective assistance of counsel, the court notes that the proper remedy would not be an entirely new sentencing hearing but rather reinstatement of petitioner's right to take a direct appeal from the sentencing order. The reason for this is that the harm resulting from the ineffective assistance is the loss of a chance at an appellate proceeding; the appropriate remedy therefore is to restore the right of direct appeal, as this places the defendant in the same position as if he had received constitutionally-sufficient advice. *Campusano v. United States*, 442 F.3d 770 (2d Cir. 2006) (Sotomayor, J.); see also *Savo*, 139 Vt. at 529 (explaining that the proper remedy is restoration of the appellate right). In a recent Vermont case, the parties achieved this result by stipulation. See *State v. Blaine*, 2012 VT 2, ¶ 11 (noting that parties agreed to dismiss similar PCR petition in exchange for an agreement to reinstate petitioner's right to take a direct appeal from probation-violation dockets). It is true that other cases have mentioned the possibility of further sentence reconsideration on the part of the trial judge, see, e.g., *Garcia v. United States*, 278 F.3d 134, 138 (2d Cir. 2002) (explaining that reconsideration might be available "if the district court discerns any useful purpose" in doing so), but the appropriateness of that remedy in this case would have to be measured against petitioner's express waiver of the right to seek sentence reconsideration at the trial-court level.

## ORDER

The State of Vermont's Motion for Summary Judgment (MPR #3), filed July 26, 2011, is ***denied***.

Dated at Chelsea, Vermont this _____ day of March, 2012.

 

_____
Harold E. Eaton, Jr.
Superior Court Judge

4