2004 VT 46

## In re Michael Gould

[852 A.2d 632]

No. 02-262

Present: Amestoy, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed June 4, 2004

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Petitioner-Appellant.

*Robert Simpson*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Respondent-Appellee.

¶ 1. **Johnson, J.** Petitioner, Michael Gould, appeals the Chittenden Superior Court's denial of his post-conviction relief motion. Gould claims that the court violated his statutory right to counsel under 13 V.S.A. §§ 5231, 5233, when it failed to assign new counsel after permitting the previous post-conviction relief counsel to withdraw. In light of the right to counsel afforded by our Public Defender Act, the court erred in refusing to appoint new counsel to assist Gould on his first post-conviction relief petition. Accordingly, we reverse and remand.

¶ 2. Petitioner Michael Gould was arraigned in Chittenden District Court and pled not guilty to charges of assault and robbery. Gould subsequently changed his plea to nolo contendere. At the plea hearing, after discussing the plea terms, petitioner stated that he understood that he could be sentenced to eighteen to twenty years. The district judge accepted the change of plea, finding it to be voluntary, factually based, and made with knowledge and understanding of the consequences and after a knowing waiver of constitutional rights.

¶ 3. At the sentencing hearing in August 1999, the trial judge imposed a sentence of between fifteen and twenty years. The judge explained that the ten-year minimum recommended in the presentence interview report was too short in light of petitioner's history of felony convictions. On the other hand, the judge credited petitioner's remorse by departing downward from the eighteen-year minimum requested by the prosecution. Defense counsel filed a motion to reconsider the sentence in November 1999, which the trial judge denied, reasoning that the sentence was not imposed in passion, was legal, and was based on petitioner's criminal history and the danger he posed to society.

¶ 4. Gould filed a pro se motion for post-conviction relief in superior court, alleging that his "conviction and/or sentence are in violation of the United States and Vermont Constitutions." In particular, he alleged that the trial judge committed judicial misconduct by attempting to coerce a plea agreement with off-the-record threats of a lengthy sentence if Gould proceeded to trial and was found guilty. Gould also

.alleged that, in the same discussion, the judge promised a lighter ten-year minimum sentence if Gould would plead guilty. Gould further claimed that the failure of his trial attorney and the prosecution to object to the alleged coercion constituted ineffective assistance of counsel and prosecutorial misconduct.

¶ 5. Gould included a request for appointment of counsel in his motion. Because the Prisoner's Rights Office had a conflict of interest, the superior court appointed Robert Andres as Gould's counsel. Attorney Andres also had a conflict of interest and was replaced as counsel in September by Martin Maley. By March 2001, attorney Maley had joined the Public Defender's Office and had been replaced by William Norful.

¶ 6. After a status conference, Norful told Gould that he would call him to follow up about additional witnesses that Gould hoped would have information favorable to his petition. When Norful did not call, Gould sent him a letter indicating that there were more witnesses in the case. Norful had decided, however, that to "avoid any misunder-standings" all future attorney client communication would be in writing. Norful replied accordingly with a two-page letter that made cursory review of each of Gould's three claims. Norful wrote the letter prior to conferring with Gould's trial counsel regarding the events at issue in Gould's petition. In the letter, Norful told Gould that there were insufficient grounds on which to present Gould's claims to the court. In essence, Norful told Gould he would not represent him.

¶ 7. At that point, Gould apparently became concerned that Norful would not zealously advocate on his behalf. Gould filed a pro se motion to bar attorney Norful from amending the petition until Norful contacted him to talk about the case. In that motion, petitioner requested the court forward a letter to Norful because he claimed that Norful had not contacted him and would not return his telephone calls. The court refused to act on the pro se motion or to forward Gould's mail to his attorney. After receiving notice that the superior court would not act on his pro se motion, Gould informed the court that he had written a letter to the professional conduct board about his attorney.

¶ 8. Norful responded by filing a one sentence motion to withdraw stating that "counsel and client have divergent theories of case progression." At the hearing on Norful's motion to withdraw, Norful informed the judge that Gould's petition alleged prosecutorial and judicial misconduct, as well as ineffective assistance of counsel. Norful then went on to state that he could not "find" evidence in the record to

support his client's claims. Norful explained that he moved to withdraw because the "necessary ... attorney client relationship" was adversely affected and Norful felt he could not "communicate with any competence regarding [Gould's] claims." He continued by stating that, as Gould's appointed counsel, he could "not find grounds, not even colorful grounds, not even a scintilla of evidence that [he could] come forward and make a plausible claim to [the] merits before the court."

¶ 9. The judge proceeded to explore the steps that Norful had taken to investigate Gould's claims. Norful described his review of the relevant transcripts and his approximately forty-five minute discussion with Gould's trial counsel. For his part, Gould tried to provide more detail about the communication between him and Norful until the judge interjected that she was not going to get into the middle of attorney-client correspondence. She stated that: "[a]ll I'm trying to do is figure out whether or not there is either a conflict or a problem of incompetence." The judge then reiterated the actions that Norful claimed he had taken in furtherance of Gould's petition, and announced that she was satisfied that Norful had been competent, thorough, and responsible. She then told Gould that he was not entitled to more assistance than Norful had already provided him and that "based on what [she] had seen, there does not appear to be grounds for the Court to appoint another attorney for [Gould]."

¶ 10. After noting the lack of objection from the State, the judge granted Norful's motion to withdraw. She then announced that she would not appoint another attorney for Gould, even though, as Gould pointed out, he had not requested that Norful be removed. She then told Gould "if you want to proceed on your own, that's fine, or get an attorney yourself, that's fine." Later, Gould renewed his motion for appointment of counsel. The judge denied Gould's motion on grounds that the matter was fully considered at the hearing on the motion to withdraw.

¶ 11. In January 2002, the State filed a motion for summary judgment accompanied by a memorandum of law, a statement of undisputed facts, and six exhibits. The motion raised, among other things, Gould's failure to present any nonhearsay evidence in support of his three claims. In support of its argument, the State cited several Vermont cases as well as the text of V.R.C.P. 56. Gould filed a handwritten motion for extension of time to respond because he had been moved to another correctional facility in Virginia and it did not have any Vermont law books. The judge granted Gould an extension, but Gould was never able to access any legal resources and was forced to

respond to the State's motion without access to Vermont statutes, rules, and case law.

¶ 12. The same judge who granted Norful's motion to withdraw granted the State's motion for summary judgment. Eight months earlier, she had heard Gould's court-appointed advocate describe how his review of Gould's case had not produced "even a scintilla" of supporting evidence. Not surprisingly, after reviewing the State's motion for summary judgment, the judge concluded that Gould had failed in his unguided attempt to produce the evidence necessary to survive summary judgment. Gould appeals from that ruling, asserting solely that the court erred in failing to appoint substitute counsel to assist him with the presentation of his petition after it allowed Norful to withdraw.

I.

■ ¶ 13. Petitioner's statutory right to the assistance of counsel on his first PCR motion was improperly denied when the trial court refused his request to appoint new counsel after allowing his previous counsel to withdraw. The Public Defender Act (PDA), enacted in 1972, created a statutory framework for implementing the constitutional right to counsel for accused indigents at trial and on appeal. 1971, No. 161 (Adj. Sess.), § 6; see also *State v. Wool*, 162 Vt. 342, 348-49, 648 A.2d 655, 659-60 (1994) (discussing the origin and purpose of the PDA). The PDA also takes the additional step of guaranteeing the right to counsel on post-conviction review to needy individuals who have been convicted of crimes, even though providing such assistance is not constitutionally compelled. 13 V.S.A. § 5233(a)(3); see also *In re Chapman*, 155 Vt. 163, 166, 581 A.2d 1041, 1043 (1990) (recognizing that there is no federal constitutional right to counsel on post-conviction review). The statute provides that "[a] needy person who is ... being detained under a conviction of a serious crime, is entitled [t]o be represented by an attorney to the same extent as a person having his own counsel .... in any [] post-conviction proceeding that the attorney or the needy person considers appropriate." 13 V.S.A. §§ 5231, 5233(a)(3); see also *In re Morse*, 138 Vt. 327, 328-29, 415 A.2d 232, 232-33 (1980).

■ ¶ 14. Prior to the enactment of the PDA, the trial court had discretion over the appointment of counsel for needy persons on post-conviction review. Unlike § 5233(a)(3) of the PDA, the PCR statute states that "[t]he court *may* appoint counsel if the prisoner is unable financially to employ counsel." 13 V.S.A. § 7137 (emphasis added). The

right to counsel provision in the PCR statute codified at 13 V.S.A. § 7137 was enacted as part of 1966, No. 41 (Sp. Sess.), § 3. The PCR right to counsel provision codified at 13 V.S.A. § 5233(a)(3) of the PDA was enacted as 1971, No. 161 (Adj. Sess.), § 6. Thus, by implication, the later enacted PDA provision superseded the earlier enacted PCR provision that deals with exactly the same issue. Comparing the plain language of the two statutes, we infer that with the enactment of the PDA, the trial court's duty to appoint counsel to assist qualified indigents on PCR became mandatory. Cf. *Russell v. Armitage*, 166 Vt. 392, 403, 697 A.2d 630, 637 (1997) ("Our goal in interpreting statutes is to effect the intent of the Legislature, which we attempt to discern first by looking to the language of the statute.").

¶ 15. The State claims that the appointment of "substitute" counsel in this situation is committed to the sound discretion of the trial court. The cases relied upon by the State in making this argument address an altogether different situation. In those cases, the trial defendants sought a counsel substitution, i.e., a switch from one assigned counsel to another; none of the defendants involved were forced to go without counsel against their wishes, although some were forced to work with counsel they did not like. See *In re Dunbar*, 162 Vt. 209, 217, 647 A.2d 316, 322 (1994) (trial court denied defendant's motion to substitute counsel and kept counsel on through trial).

¶ 16. Gould relies on *In re Morse*, 138 Vt. 327, 415 A.2d 232 (1980), to support his claim on appeal. In *Morse*, as in the instant case, a convicted prisoner filed a pro se motion for post-conviction relief pursuant to 13 V.S.A. § 7131. The petitioner in *Morse* requested that counsel be appointed. The trial court refused petitioner's request for appointment of counsel and for a hearing on the petition, ruling that the "files and records of the case 'conclusively show that the plaintiff is entitled to no relief and therefore no hearing on the motion is necessary.'" *Id.* at 328, 415 A.2d at 232 (quoting 13 V.S.A. § 7133). We reversed and remanded for appointment of counsel based on our interpretation of the PDA sections at issue here. *Id.* at 329-30, 415 A.2d at 233. In so holding, we reasoned that:

> Our law is clear that when a needy person is entitled to the appointment of an attorney, that appointment must be made. The failure of the court to appoint counsel to assist the defendant before any ruling was made on the [post-conviction relief] motion was error of such prejudice that the ruling below must be reversed, and the matter remanded for the ap-

pointment of counsel to assist defendant in the proper preparation of his motion.

*Id.* at 330, 415 A.2d at 233.

¶ 17. Morse's case had been dismissed pursuant to a provision in the PCR statute that requires the court to make a preliminary review of the PCR motion before forwarding it to the State. 13 V.S.A. § 7133. If the trial court determines after reviewing the "files and records of the case" that a prisoner is not entitled to relief, the trial court must summarily dispose of the case without the need for any further proceedings or a hearing. *Id.* In remanding the case for appointment of counsel to assist Morse, we stated that "[i]f, after conferring with counsel and reviewing the record of the original proceeding, it appears that defendant has a meritorious claim, he may proceed anew under 13 V.S.A. §§ 7131-7137." *Morse*, 138 Vt. at 330, 415 A.2d at 233. Our statement was a reference to the fact that Morse's petition still had to clear the statutory hurdle presented by 13 V.S.A. § 7133, i.e., that it had merit, before progressing to a dispositive, adversarial hearing.

¶ 18. Nothing in *Morse* or 13 V.S.A. § 7133 contradicts our current conclusion that Gould had a right to new counsel after the trial court allowed Norful to withdraw. Here, the trial court had forwarded the petition to the State, thus removing it from the ambit of 13 V.S.A. § 7133.

¶ 19. In *Morse*, we emphasized that the right to counsel under the statute applies "at all stages of a criminal proceeding listed in 13 V.S.A. §§ 5232-5233, including the right to be represented at . . . any 'post-conviction proceeding that the attorney *or the needy person considers appropriate.*'" 138 Vt. at 328-29, 415 A.2d at 232-33 (quoting 13 V.S.A. § 5233(a)(3)) (emphasis added). Nonetheless, the trial court discharged Norful before the case had progressed beyond its preliminary phase, thus depriving Gould of the assistance of counsel when it mattered most. Moreover, there can no doubt that Gould considered assistance of counsel "appropriate" here, and that he made his assessment clear to the trial court at both the hearing on Norful's motion to withdraw — which he ostensibly opposed — and by his subsequent motion for appointment of new counsel.

¶ 20. The State argues that the superior court fulfilled its statutory duty to provide petitioner with counsel because Norful, as "competent counsel," provided Gould with "unbiased legal advice" that his claims lacked merit. Far from fulfilling Gould's statutory right to counsel, the process below effected a double deprivation of counsel. Cf. *State v. Lewis*, 291 N.W.2d 735, 738 (N.D. 1980) (requiring appointment of

substitute counsel as soon as first appointed counsel makes opinion of frivolity known to court so as to eliminate defendant's "double burden" of showing that appeal has enough merit to warrant appointment of substituted counsel, then later that it has enough merit to warrant reversal). The first deprivation occurred when Gould's appointed advocate undermined his case by providing the court with a resoundingly negative assessment of the case. Norful's hearing testimony, in both tone and content, potentially damaged Gould's case. Norful at no time communicated, in any significant capacity, with the court on behalf of Gould. Instead he appeared as Gould's de facto adversary at a hearing where his interests were at odds with Gould's. This Court has no reason to question Norful's sincere belief that there were no grounds, "not even colorful grounds, not even a scintilla of evidence" supporting his client's position. Nonetheless, such statements hardly satisfy a petitioner's expectation of zealous representation by counsel. As the Pennsylvania Supreme Court observed, petitioners in Gould's situation are "'sandbagged when the counsel appointed by one arm of the Government seems to be helping another [arm] to seal his doom.'" *Commonwealth v. Jones*, 301 A.2d 811, 815 (Pa. 1973) (quoting *Suggs v. United States*, 391 F.2d 971, 974 (D.C. Cir. 1968)). When this occurred, petitioner was left pro se to explain why the relationship with his counsel had broken down. At the same time, Gould had to convince the court that his appraisal of the case, not that offered by his own counsel, warranted the appointment of substitute counsel.

¶ 21. The second deprivation occurred when the court refused to appoint substitute counsel. This was a first petition for PCR and the claim involved matters outside the record. An effective presentation of the case needed the assistance of counsel to gather the evidence and provide affidavits, if possible, to respond to the summary judgment motion. As the United States Supreme Court reasoned in an analogous context, the adversarial system of justice is "premised on the well-tested principle that truth — as well as fairness — is best discovered by powerful statements on both sides of the question." *Penson v. Ohio*, 488 U.S. 75, 84 (1988) (internal citation omitted). We can only assume that Gould, sitting in a Virginia prison with no Vermont law library, was unable to muster the most powerful statements for his side without aid of counsel.

¶ 22. We have repeatedly recognized that persons who voluntarily forego the aid of counsel likely do so to their detriment. See, e.g., *State v. Wool*, 162 Vt. at 346, 648 A.2d at 658; *State v. Dragon*, 135 Vt. 168, 169, 376 A.2d 12, 13 (1977); accord *Faretta v. California*, 422 U.S. 806,

835 (1975) (discussing the "dangers and disadvantages of self-representation"). The Legislature recognized the advantage of counsel, even at the post-conviction relief stage, in the explicit language of the Public Defender Act. Upon remand, new counsel shall be appointed to assist Gould.

## II.

¶ 23. The trial court's denial of counsel in this case can be easily remedied, but we are not unmindful of the tensions between counsel and petitioner that resulted in the trial court's refusal to appoint another lawyer. For petitioners, a PCR is the last chance to attack the conviction. For appointed counsel, the viable issues for attack may be few. Therefore, the specter of sanctions for filing frivolous claims hangs over the conscientious lawyer, while the unconscientious lawyer looks for any avenue of escape from the representation. Our challenge is to construe the PDA statute so that it delivers a meaningful right to counsel for petitioners consistent with the apparent legislative intent of the PDA, while still protecting attorneys from unnecessary entanglements with the professional responsibility board.

¶ 24. In Vermont, the potential for ethical issues to arise in PCR cases is diminished somewhat by the provisions of the PCR statute that allow the trial court to make a dispositive determination of a motion's merit before forwarding it to the State and holding further hearings. 13 V.S.A. § 7133. Presumably, a case that properly falls within this category will require less effort on counsel's part than cases where the record presents more viable arguments against the underlying conviction. In addition, the PCR statute makes clear that the trial "court is not required to entertain a second or successive motion for similar relief on behalf of the same prisoner." *Id.* § 7134. Thus the Legislature has attempted to strike a balance between giving prisoners all the tools they need to mount a final attack on their convictions and to make sure that they were arrived at fairly, while keeping the court and its officers free from absolutely groundless cases.

¶ 25. Notwithstanding these statutory safeguards, the ethical and practical issues presented by this case do arise and can be handled by rulemaking. In fact, the PDA encourages implementation via the rulemaking process. See 13 V.S.A. § 5204 ("The supreme court shall make such rules as shall further the intent and purposes of this chapter."). Therefore, we refer this issue to the Criminal Rules Committee with instructions to propose a rule that will prospectively address the issues discussed herein for future cases. As part of its

further study of the issue, the rules committee should look to the experience of the several states that have confronted the precise problem that is before us today — providing PCR petitioners with counsel even when first appointed counsel seeks to withdraw on grounds that the underlying claim is frivolous. These jurisdictions have mandated procedures, by rule or decision, to safeguard the right to counsel in the PCR context. See *State v. Rue*, 811 A.2d 425, 435-37 (N.J. 2002) (requiring appointment of counsel to indigents on first PCR; prohibiting withdrawal of counsel notwithstanding counsel's belief that petition is without merit; and creating narrow exception to ethical rule governing attorney representation in frivolous cases); *Tazruk v. State*, 67 P.3d 687, 693-94 (Alaska Ct. App. 2003) (Coats, C.J., concurring) (recognizing court's use of *Anders* type procedure to certify that petition is without merit before permitting appointed PCR counsel to withdraw); *Johnson v. State*, 364 S.E.2d 201, 201 (S.C. 1988).

### III.

¶ 26. We reverse and remand summary judgment on Gould's PCR. On remand, Gould shall be provided with ample time to work with new appointed counsel to amend his petition as necessary and to have assistance of counsel in opposing State's summary judgment motion or at any other hearing related to the PCR that may occur in the case.

*Reversed and remanded for further proceedings consistent with the views expressed herein.*