2014 VT 30

### In re Joseph Bruyette

[96 A.3d 1151]

No. 12-471

Present: **Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Toor, Supr. J., Specially Assigned**

Opinion Filed April 25, 2014

*Michael Rose,* St. Albans, for Petitioner-Appellant.

*Joseph Bruyette,* Pro Se, Beattyville, Kentucky, Petitioner.

*William H. Sorrell*, Attorney General, and *John R. Treadwell*, Assistant Attorney General, Montpelier, for Respondent-Appellee.

¶ 1. **Robinson, J.** Petitioner's attorney Michael Rose has filed a motion for leave to withdraw. This case calls upon us to apply 13 V.S.A. § 5233 as interpreted in *In re Bailey*, 2009 VT 122, 187 Vt. 176, 992 A.2d 276.

¶ 2. Petitioner filed a petition for post-conviction relief (PCR) in the superior court, alleging ineffective assistance of counsel in his underlying criminal case because his lawyers induced him to reject a plea bargain for a much lower sentence "by misrepresenting the potential maximum sentencing exposure petitioner was facing at trial." He went on to allege that his counsel told him that he faced a maximum exposure at trial of twenty-five years, essentially the maximum in the plea bargain offer, but he was sentenced to a maximum sentence of eighty-five years.

¶ 3. The superior court appointed a lawyer from the Prisoners' Rights Office of the Defender General to represent petitioner in that court. The appointed public defender accepted representation and proceeded to represent petitioner throughout the trial court proceeding.

¶ 4. The State moved to dismiss the petition under 13 V.S.A. § 7134 because it was "a second or successive motion for similar relief on behalf of the same prisoner." The public defender answered that the case did not fit within the statute because the theory on which this petition was based had not been raised in earlier PCR petitions because it was not available at the time of the earlier petitions. The State responded that the theory had always been available, and the Supreme Court precedent on which petitioner relied, *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376 (2012), did not establish any new rights or state a new constitutional rule.

¶ 5. The superior court agreed and granted summary judgment for the State. Shortly thereafter, the public defender filed a notice of appeal on petitioner's behalf. The public defender filed a docketing statement in this Court, although conflict counsel then entered a notice of appearance. In a letter to petitioner, filed in this Court by petitioner, the public defender said she initially thought there were no grounds for appeal, but then said "I changed my opinion and filed a notice of appeal for you." She added, however, that since filing the notice of appeal she discov-

ered the Defender General's office had a conflict of interest so the case had been assigned to conflict counsel.

¶ 6. The first assigned conflict counsel withdrew because her firm had done a merits review for the Defender General on petitioner's ineffective-assistance-of-counsel claim in connection with a prior PCR action. Counsel concluded that the firm's prior negative merits review created a conflict of interest. The case was then assigned to attorney Michael Rose.

¶ 7. Attorney Rose filed a motion for leave to withdraw, citing Vermont Rule of Professional Conduct 3.1 and *Bailey*. Because it became clear during the argument on that motion that the Defender General had not gone through the procedure it typically goes through before seeking leave to withdraw on the basis cited by Attorney Rose, we invited the Defender General to present its position on the motion. The Defender General responded with a letter representing that an attorney retained to review petitioner's case agreed with the Defender General's determination that the appeal issues "lack merit." The Defender General further represented that continued representation of petitioner would constitute a violation of the Vermont Rules of Professional Conduct and the Vermont Rules of Civil Procedure, and accordingly declined assignment pursuant to 13 V.S.A. § 5233.

¶ 8. Petitioner makes several arguments on appeal, some of which are directly germane to Attorney Rose's motion, and some of which are more tangentially related. First, he argues that the counsel who reviewed the case for the Defender General did an inadequate review. Petitioner does not deny that the legal theory upon which his ineffective-assistance-of-counsel claim was based — that counsel was ineffective in the context of advising him concerning a plea agreement — was available in Vermont at the time of his prior PCR claims. See *State v. Bristol*, 159 Vt. 334, 337, 618 A.2d 1290, 1292 (1992) ("Because the plea bargain stage is critical to a criminal proceeding, fundamental attorney error at that stage may invalidate a conviction."). However, he argues that PCR counsel in his prior PCR claims were themselves ineffective and failed to raise the claim, so that barring him from raising the claim in a successive petition is improper here. See *Martinez v. Ryan*, ___ U.S. ___, ___, 132 S. Ct. 1309, 1315 (2012) ("Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."). He also argues that insofar as the

Defender General's office has a conflict in his case, an independent attorney retained by the Defender General likewise is conflicted. Finally, petitioner argues that we should apply a pre-2004 version of 13 V.S.A. § 5233 in evaluating counsel's motion. We consider these arguments in the context of our review of counsel's motion.

¶ 9. ■ A convicted offender has no constitutional right to state-funded counsel in an appeal from a trial court judgment in a PCR case. See *Coleman v. Thompson*, 501 U.S. 722, 755 (1991). We emphasize the limitation of this principle to an *appeal* of a judgment in a collateral proceeding because the U.S. Supreme Court has expressly left open the question of whether a prisoner has a right to effective counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial. See *Martinez*, ___ U.S. at ___, 132 S. Ct. at 1315 (recognizing that the issue remained unresolved, and declining to reach it); *Coleman*, 501 U.S. at 755 (declining to decide whether there is a constitutional right to counsel "in those cases where state collateral review is the first place a prisoner can present a challenge to [a] conviction."); see also *State v. Lund*, 168 Vt. 102, 105, 718 A.2d 413, 415 (1998) (stating that issues relating to conduct of counsel confined to post-conviction proceedings when record of trial proceedings insufficient to assess adequacy of representation).

¶ 10. ■ Vermont law does, however, provide a statutory right to state-funded counsel in a PCR proceeding. See 13 V.S.A. § 5233. Previously, the statutory right to counsel was available without reference to the merits of the claims raised in the PCR petition. See *In re Gould*, 2004 VT 46, ¶¶ 13-22, 177 Vt. 7, 852 A.2d 632. However, in 2004, the Legislature amended the statute to define the statutory right to state-funded counsel as a right:

> [t]o be represented in any other postconviction proceeding which may have more than a minimal effect on the length or conditions of detention where the attorney considers the claims, defenses, and other legal contentions to be warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

2003, No. 157 (Adj. Sess.), § 10, codified at 13 V.S.A. § 5233.

¶ 11. This Court considered the impact of the statutory amendment on the right to state-funded counsel in the case of *Bailey*.

2009 VT 122, ¶¶ 11-15. In that case, the trial court denied petitioner Bailey's PCR petition, and he filed a pro se notice of appeal. On appeal, pursuant to Bailey's request for counsel and this Court's referral, Attorney Fulcher was assigned by the Defender General's office as conflict counsel. Attorney Fulcher subsequently moved to withdraw, asserting that she could not continue to represent petitioner in light of Vermont Rule of Professional Conduct 3.1 ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law.") and Rule 3.3 ("A lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal . . . ."). She also cited 13 V.S.A. § 5233. A single justice issued an entry order requiring counsel to submit the equivalent of an *Anders* brief supporting her claim. *Id.* ¶ 4; *Anders v. California*, 386 U.S. 738 (1967). Counsel sought review from the full Court.

¶ 12. ▮ The immediate issue before the Court was whether the order to file an *Anders* brief was appropriate. The Court reasoned that the procedures required by the U.S. Supreme Court in *Anders* were designed to protect the underlying constitutional right to counsel. Because a petitioner has no constitutional right to counsel in civil PCR proceedings, the Court concluded that "[a]n *Anders*-type explanation justifying counsel's withdrawal is not required in the PCR context."[1] *Bailey*, 2009 VT 122, ¶ 9. The Court concluded that the plain language of the statute provided "that counsel must decide when state-funded legal representation is warranted in a post-conviction proceeding" without "second-guessing by courts." *Id.* ¶ 11. The Court thus held:

> [W]hen counsel avers to this Court that the "claims, defenses, and other legal contentions" presented in a PCR

---

[1] *Bailey* involved a claimed right to counsel on appeal from a judgment in a PCR proceeding. We need not consider whether this holding extends to an initial PCR action in the trial court. Insofar as our holding in *Bailey* rested heavily on the fact that there is no constitutional right to counsel in a PCR appeal, and given the uncertainty as to whether there is such a right, at least in some cases, in connection with certain initial PCR proceeding before the superior court, we leave that question for another day. See *Martinez*, ___ U.S. at ___, 132 S. Ct. at 1315 (declining to resolve whether an exception to the rule that there is no right to counsel in collateral proceedings "exists as a constitutional matter").

are not "warranted by existing law or nonfrivolous argument," counsel may withdraw, and the state's obligation to petitioner is fulfilled, under the statute. Counsel's representation to the court that he or she cannot ethically advocate her client's position, particularly when confirmed by the Defender's review, satisfies the statute.

*Id.* ¶ 12; see also *id.* ¶ 20 ("The attorney does not need this Court's permission to determine whether to represent his or her client, and the statute does not require us to review the substance of counsel's decision. A ruling on the motion to withdraw does not require us to inquire as to the merits of the case at all. It simply recognizes that the Legislature has left it to the attorney to decide which PCR cases to pursue, not this Court."). We note that *Bailey* dealt first and foremost with the limits on the statutory right to publicly funded counsel. We were not concerned in that case with the standard applicable to a motion for leave to withdraw filed by private counsel that does not implicate the public fisc or the requirements of 13 V.S.A. § 5233. To the extent that the dissent suggests that a public defender's ability to withdraw pursuant to § 5233 is distinct from the Defender General's obligation to fund counsel for a PCR client, that position is not supported by the statute or the holding in *Bailey*.

¶ 13. ▮ The Court qualified its holding by noting that a petitioner was free to pursue an appeal without legal representation, and stating that "if it appears to the trial court during pretrial proceedings that there may be substance and merit to a petition, the court may reappoint counsel to reevaluate the case accordingly." *Id.* ¶ 14.[2] This caveat — that the court may refer a case back to the Defender General for reevaluation if it concludes that a petitioner raises nonfrivolous claims — applies with equal force in this Court of appeal.

¶ 14. We expressly declined to address one issue in *Bailey*. As noted above, the *Bailey* Court was reassured in its holding by its understanding of the Defender General's process for reviewing cases for frivolity. *Id.* ¶ 12. In particular, this Court understood

---

[2] This reference to a trial court's discretion to refer a case back to the Defender General for reevaluation assumes that the constitution permits the withdrawal of publicly funded counsel in an initial PCR proceeding in the first instance; for the reasons noted above, we need not address the continuing validity of this assumption in light of *Martinez v. Ryan*, ___ U.S. at ___, 132 S. Ct. 1309 (2012).

that process to include "an initial review of the record and file by two attorneys, and if neither can find a meritorious claim, a review of these materials by a third attorney." *Id.* ¶ 5. See also C. Martin, *Response to the Bailey Decision*, 36 Vt. B.J. 20 (Spring 2010) (describing review process in detail). The Court expressly noted that the adequacy of that process was not challenged in *Bailey* and specifically stated that its decision did not address the validity of the Defender General's screening process. 2009 VT 122, ¶¶ 5, 9. Beyond affirming that such a review has taken place, or responding to a colorable constitutional challenge, it is difficult to discern what we would be looking for in a deeper review of the process.

¶ 15. ■ ■ With this background in mind, we turn to the issues before us in connection with this motion. Petitioner argues that his case should fall under the pre-amendment version of 13 V.S.A. § 5233, whereby the right to assigned counsel vests, regardless of counsel's assessment of the merits of the case. In order for the pre-amendment version of the statute to apply, petitioner must have filed this PCR petition prior to the 2004 amendment date. See *In re Crannell*, 2012 VT 85, ¶ 6, 192 Vt. 406, 60 A.3d 632. Petitioner filed his current PCR petition in 2012. Although he contends this PCR petition "comes from . . . PCR proceedings beg[inning] in 1995," the current PCR petition is a new proceeding, which originated well after the statute's amendment. Accordingly, 13 V.S.A. § 5233, as amended in 2004, applies.

¶ 16. ■ As noted above, our role in reviewing motions to withdraw pursuant to § 5233 is limited. To the extent that the Defender General seeks to deny publicly funded counsel, we can ask the Defender General for reassurance that the case has undergone the multi-step review referenced in *Bailey*. In this case, we infer from the Defender General's letter to the Court that petitioner's case has been the subject of multiple attorney reviews. This conclusion is buttressed by the documents provided directly to this Court by petitioner himself, including letters from two different lawyers.

¶ 17. We next consider whether the standard applied by counsel satisfies the requirements of the statute. Attorney Rose's motion to this Court expressly states his view that continuing his representation of petitioner is precluded by the requirements of V.R.Pr.C. 3.1 ("A lawyer shall not bring or defend a proceeding, or

assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."). The Defender General asserted that petitioner's claims "lack merit," but further stated that continued representation of petitioner would constitute a violation of Vermont's professional conduct and civil procedure rules.

¶ 18. ■■ We need not decide whether an assertion that a case "lacks merit" would, on its own, be sufficient to support a motion for leave to withdraw publicly funded counsel pursuant to 13 V.S.A. § 5233. See *In re S.C.*, 2014 VT 7, ¶ 8, 195 Vt. 415, 88 A.3d 1220 (per curiam) ("[T]he assertion of a claim that an attorney believes to be without merit or lacking in any meaningful chance of success does not render an appeal 'frivolous' or unethical."). In this case, the Defender General stated that continued representation of petitioner would constitute a violation of professional conduct rules and the Vermont Rules of Civil Procedure. Although the Defender General did not specify which professional conduct and civil procedure rules would be implicated by its continued representation of petitioner, we infer from the circumstances of this case, including letters from counsel to petitioner forwarded to this Court by petitioner, that the Defender General was referencing Rule of Professional Conduct 3.1 and Civil Rule 11(b)(2) (stating that attorney or unrepresented party who files pleadings with court is certifying that to the best of the person's knowledge, information and belief, after reasonable inquiry, "the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"). The standard in 13 V.S.A. § 5233 allows the Defender General to deny publicly funded representation in cases in which that representation would violate Rule of Professional Conduct 3.1 and Civil Rule 11(b)(2), which is what the Defender General asserts here.

¶ 19. ■■ Finally, we reject petitioner's argument that Attorney Rose, as conflict counsel pursuant to a contract with the Defender General, has a conflict because the Defender General has a conflict. The Defender General's conflicts are not imputed to outside counsel who contract with the Defender General to provide representation for qualifying clients. The whole point of

"conflict counsel" is to provide state-funded legal representation , by a lawyer who is not part of the Defender General's office. Cf. V.R.Pr.C. 1.10 (imputing conflicts within a firm).

¶ 20. In light of the above analysis, we grant Attorney Rose's motion for leave to withdraw, and we will not appoint new publicly funded counsel.[3] We reiterate our caveat in *Bailey*: If further review by this Court of petitioner's claims leads us to conclude that the claims have merit that was apparently unrecognized by the Defender General, we may reassign the case to the Defender General for reevaluation. 2009 VT 122, ¶ 14.

*Attorney Michael Rose's motion for leave to withdraw is granted and new state-funded counsel will not be appointed. Petitioner, or other counsel on his behalf, shall file his brief and printed case within forty-five days of this order.*

¶ 21. **Dooley, J.,** concurring, in part, and dissenting, in part. Although I greatly doubt that petitioner's case on appeal is frivolous under the standard we just announced in *In re S.C.*, 2014 VT 7, ¶¶ 8-9, 195 Vt. 415, 88 A.3d 1220, as discussed below, I acknowledge that 13 V.S.A. § 5233(a)(3), as interpreted in *In re Bailey*, 2009 VT 122, 187 Vt. 176, 992 A.2d 276, requires that we grant counsel's motion to withdraw, and I concur in that part of the majority's order. As requested by withdrawing counsel, however, I would rule that petitioner is entitled to replacement counsel and direct the Defender General to supply and fund such counsel. On the latter point, I dissent from the majority decision. Three factors prompt my dissent.

---

[3] While this motion was pending, petitioner filed various other motions with this Court. In February 2014, petitioner filed a motion captioned as a motion for the writ of error coram nobis, which he later withdrew. Petitioner has also filed a "Motion for Included Information" containing additional discussion of his request for conflict-free counsel. Lastly, petitioner has filed a motion requesting habeas corpus relief. To the extent that these motions address petitioner's request for state-funded, conflict-free counsel they are resolved by this opinion. Claims raised in his motion for habeas corpus relief that were also raised in his PCR petition may be addressed with the merits of his PCR appeal. Insofar as his motion requests habeas relief apart from the claims petitioner raised in his PCR petition, he should direct those claims to the superior court of the county where the sentence was imposed; the relief available in this Court is limited to appellate review of the questions raised in the PCR proceeding on appeal. 13 V.S.A. § 7136; *In re Mason*, 126 Vt. 122, 123, 223 A.2d 477, 477 (1966) (stating that this Court's original jurisdiction over requests for post-conviction and habeas corpus relief "has been removed" and the relief available here is limited to appellate review).

¶ 22. First, I am concerned about the history of this case up until the Defender General's letter refusing to fund further representation. We are reviewing a summary judgment decision of the superior court. Petitioner filed a PCR petition in that court which alleged ineffective assistance of counsel in his criminal case because his lawyers induced him to reject a plea bargain for a much lower sentence "by misrepresenting the potential maximum exposure petitioner was facing at trial." He went on to allege that his counsel told him that he faced a maximum exposure at trial of twenty-five years, which was essentially the maximum in the plea bargain offer, but he was sentenced instead to a maximum sentence of eighty-five years.

¶ 23. On July 18, 2012, the superior court notified the Prisoners' Rights Office of the Defender General of the court's intention to appoint the Prisoners' Rights Office to represent petitioner, with the following statement:

> Please review and advise this Court within two weeks from the above date whether your office has a conflict of interest.

> If there is no response from your office within this time period, an order will be prepared for the Judge's signature to appoint the Prisoners' Rights Office as counsel for the petitioner in this matter.

There was no response, and Judge Teachout on August 9th appointed a particular public defender in the Prisoners' Rights Office to represent petitioner in that court. The appointed public defender proceeded to provide representation.

¶ 24. After a skirmish over venue that was resolved by stipulation, the State moved to dismiss the petition under 13 V.S.A. § 7134 because it was "a second or successive motion for similar relief on behalf of the same prisoner." The public defender answered that the case did not fit within the statute because the theory on which this petition was based had not been raised in earlier PCR petitions because it was not available at the time of the earlier petitions. The State responded that the theory had always been available, and the Supreme Court precedent on which petitioner relied, *Lafler v. Cooper*, ___ U.S. ___, 132 S. Ct. 1376 (2012), did not establish any new rights or state a new constitutional rule.

¶ 25. Approximately two months after the State filed its response, petitioner requested a status conference because the public defender would not respond to the State's response filing. Whatever the reason, the public defender never withdrew from representation. The court issued its decision on the motion to dismiss before it received the motion for a status conference, and the court denied the latter motion for that reason. Thirteen days after the decision was issued, the public defender filed a notice of appeal. Thereafter, the public defender filed a docketing statement in this Court, although conflict counsel then entered notice of appearance. In a letter filed by petitioner, the public defender said she first thought there were no grounds for appeal, but "I changed my opinion and filed a notice of appeal for you." She added that, since filing the notice, the case had been assigned to conflict counsel, as she had discovered the Defender General's office had a conflict of interest.

¶ 26. Ironically, conflict counsel withdrew because her firm had done a merits review for the Defender General on petitioner's prior, and different, ineffective-assistance-of-counsel claim in his first PCR proceeding. The firm had concluded that the claims had no merit. Counsel concluded that the negative merits review created a conflict of interest. The case then went to attorney Michael Rose.

¶ 27. The second factor is the grounds for the decision of the Defender General. His letter states that "[w]e have advised him that his appeal issues lack merit, and an attorney retained to review his case agrees with that determination." It goes on to state that the Defender General will not accept any further appointment. As the majority decides, this letter means that the Defender General will not fund any representation of petitioner on this claim.

¶ 28. Despite a number of decisions about the withdrawal of publicly funded counsel in PCR cases, we have never examined the compliance of the Defender General's evaluation procedure with the law. This is partly because the Defender General has never disclosed how the procedure works, relying only on short, cryptic letters conveying refusal to fund further representation. It is also because the statute relied upon, 13 V.S.A. § 5233(a)(3), relates to the effect of the evaluation of a case by "the attorney"

providing representation and does not authorize any review procedure by the Defender General.[4]

¶ 29. The third factor is the standard imposed by 13 V.S.A. § 5233(a)(3). The standard is taken from Vermont's Rules of Professional Conduct 3.1 and Rules of Civil Procedure 11(b)(2). We defined the meaning of this standard in the recent decision in *In re S.C.*, 2014 VT 7, ¶ 8:

> Contrary to counsel's suggestion, the assertion of a claim that an attorney believes to be without merit or lacking any meaningful chance of success does not render an appeal "frivolous" or unethical. As the official comment to Rule 3.1 explains, an argument "is not frivolous even though the lawyer believes that the client's position ultimately will not prevail." V.R.Pr.C. 3.1 cmt. [2]; . . . Of course, a lawyer's duty of candor continues to require that he or she "not knowingly . . . make a false statement of fact or law to a tribunal," offer false evidence, or fail to disclose a material fact or controlling legal authority. V.R.Pr.C. 3.3(a). A good faith argument, however, may be predicated on whatever pertinent facts and controlling law are most favorable to the client without violating these duties, and certainly "need not conclude with the lawyer's assertion that [his or her] client is entitled to prevail."

(additional citations omitted). We summarized that because frivolous claims arise only in the "rare case," the risk that an appointed lawyer will commit an ethical violation is "small." *Id.*

¶ 30. I start with the most obvious and fundamental reason why I cannot vote to let the Defender General refuse to fund further representation. It is clear even from the language of his terse letter that the review process is using a standard of merit, not frivolity, in making the review decisions. That is the ground *explicitly* stated in the letter.

¶ 31. In this case, we know more about the review decision than the Defender General's letter discloses. Petitioner shared with this Court the letter from the independent lawyer evaluating petition-

---

[4] The Defender General's website contains many forms, including a form to apply for a public defender and a PCR form. Nowhere does it mention the Defender General's review process or set out the procedures to implement the policy. Office of the Defender General, http://defgen.vermont.gov/ (last visited Apr. 21, 2014).

er's appeal.[5] He concluded: "Under these circumstances, Mr. Bruyette could not sustain his burden under *In re Laws*, and the trial court properly granted the State's motion to dismiss. Any attempts to reverse this ruling on appeal would inevitably prove fruitless." I would paraphrase the letter as saying that the trial court decision is right and it will not be reversed on appeal. This is clearly not the standard of frivolity as explained in *In re S.C.*, 2014 VT 7, ¶ 8. Under this standard, we can expect frequent refusals to fund representation to continue and not in the "rare case" as stated in *S.C.* Thus, there is no support for the Defender General's decision not to fund further representation.

¶ 32. The majority has adopted a "magic words" standard for affirming the Defender General's decision not to fund representation in this and other cases — if the Defender General cites to 13 V.S.A. § 5233 and Rule of Professional Conduct 3.1, it is irrelevant whether the petitioner's case is actually frivolous, and irrelevant whether the Defender General states that he acted under a standard not consistent with either the statute or Rule 3.1. Under the majority's review standard, we will always "infer" compliance with the law from the boilerplate statement despite the clear evidence of noncompliance. Under the majority's review standard, if the petitioner provided us a letter from independent counsel concluding that petitioner's case has merit, the Defender General's magic words would prevail to deny petitioner counsel.

¶ 33. The majority states that it is deciding this case without deciding whether "an assertion that a case 'lacks merit' would, on its own, be sufficient to support a motion for leave to withdraw publicly funded counsel pursuant to 13 V.S.A. § 5233." *Ante*, ¶ 18. This is really an assertion that it does not matter whether a determination that a case lacks merit is enough under the statute because the boilerplate magic words will always control making the actual standard used irrelevant.

¶ 34. The majority states that its review standard is required by the statute and by our decision in *Bailey*. Neither supports the decision. The statute bases the right to counsel on an attorney's consideration that petitioner's position is based on "a nonfrivolous argument for the extension, modification, or reversal of existing

---

[5] According to petitioner's filing, the public defender sent the evaluation to petitioner, who then sent it to us. The Defender General's letter says the case was evaluated by "an attorney retained to review [the] case." It is clear that the review cited in the letter is the review described in the text.

law or the establishment of new law." 13 V.S.A. § 5233(a)(3). In fact, the public defender who took the appeal found a nonfrivolous ground for petitioner's case and the review lawyer was either never asked to review petitioner's case under this standard or failed to do so. There is nothing in the statute to suggest that no attorney has to have the opinion stated in the statute and the only requirement is that the Defender General cite the statute.

¶ 35. *Bailey* decided what the withdrawing lawyer must do, and I agree that the withdrawing lawyer here complied with the *Bailey* requirements. *Bailey* stated explicitly that it was not evaluating "the validity of the Defender's screening process," 2009 VT 122, ¶ 17, but the majority has applied it in exactly that way here. *Bailey* does not endorse the magic words standard to deny all legal representation to a PCR plaintiff.

¶ 36. I find no solace in the majority's understanding of the evaluation process or our opportunity to reassign a case to the Defender General for reevaluation. If we were going to do the latter, the first case in which it should occur is this one. Both the letter from the review lawyer and the letter from the Defender General indicate that they used the wrong standard.[6] If we wanted to be sure that the right standard, consistent with *S.C.*, was employed, we would reassign the case for a new evaluation under the *S.C.* standard.[7] The majority decision to rely upon the boilerplate magic words, which are present in every letter from the Defender General denying funding of counsel, is also a decision that the grounds for reassignment will not appear. Of course, even if we were to reassign the Defender General, there is no right to a reevaluation, or any assurance that if the Defender General chooses to reevaluate, the process will be any different from the first time.

---

[6] The majority decision implies that the Defender General has made a personal decision that the case is frivolous. Nothing in the various filings in the cases involving this statute, or in the Vermont Bar Journal article cited by the majority, *ante*, ¶ 14, has ever suggested that the Defender General made a personal decision that petitioner's case is frivolous or that the Defender General would personally breach the Rules of Professional Conduct by extending representation to petitioner. The decision is actually made by others and implemented by the Defender General.

[7] We should also require the Defender General to send out to all counsel assigned in PCR cases, and to reviewing counsel, a communication including the *S.C.* decision and directing that they follow it.

¶ 37. I add that the majority's understanding of the review process is apparently wrong. While there were three lawyers who gave opinions in this case, one — the public defender — found petitioner's case to be not frivolous. I continue to believe that the secrecy of the process, and the absence of any regulation or oversight, undercuts any assurance of its reliability.

¶ 38. I have a second reason for my conclusion that we should not accept the Defender General's refusal to fund future representation. Although the issue before the superior court was identical to that before us, and we face the issue with a de novo standard of review, the public defender did not assert that representation in the superior court would be inconsistent with 13 V.S.A. § 5233(a)(3) and, in fact, provided that representation. After receiving an adverse decision, the public defender filed a notice of appeal explicitly stating that she found merit to the appeal. Only because of the discovery of a conflict of interest not involving the assigned public defender did the public defender have to withdraw from representation in the appeal.[8]

¶ 39. To the extent there is any ethical or Civil Rule 11 requirement that the lawyer not provide representation because the petitioner's position is frivolous, that requirement applied to the public defender. It was particularly applicable because the public defender not only provided representation but filed the notice of appeal. I have concluded before that once the Defender General or a public defender embarks on representation without refusing that representation or withdrawing under § 5233(a)(3), they have waived their right to claim that the client's position is frivolous. See *In re Crannell*, 2012 VT 85, ¶¶ 20-21, 192 Vt. 406, 60 A.3d 632 (Dooley, J., concurring). That policy must apply to filing a notice of appeal. When a lawyer withdraws in midstream, that lawyer does harm to the client. In this case, all the appeal lawyer must do is resubmit the memorandum of law presented to

---

[8] While I would not rule, in this case, that the Defender General cannot determine whether to fund an appeal when he could not represent the petitioner because of a conflict of interest, I do not rule that out on a more complete record.

I do find relevant, however, that the Defender General failed to identify the conflict of interest that precluded representation of petitioner despite being directed to do a conflict check by the Rutland Superior Court staff. If the Prisoners' Rights Office had acted diligently, the representation question could have been resolved in the trial court. It is part of the reason that I would rule that the Defender General should be precluded from refusing representation now.

the trial court in the form of a brief to this Court, hopefully with additional argument as to why the trial court decided the case the wrong way. I am confident that the Defender General can find a lawyer who can provide that representation.

¶ 40. These facts raise additional questions as to whether the Defender General's review process in this case, whatever it is, complies with the statute. Section 5233 provides that the petitioner is entitled to representation unless the lawyer who represents the petitioner determines that the case is frivolous. In fact, the only lawyer who actually extended representation to petitioner was the public defender. As conflict counsel, Michael Rose may have become counsel of record but he never provided any legal services to petitioner. The independent review lawyer never represented petitioner. To the extent the statute has any authorization for the Defender General to refuse representation in the future, I think he is bound by the opinion of his public defender, expressed in both words and deeds, that petitioner's case is not frivolous.

¶ 41. In summary, I join the decision to allow Michael Rose to withdraw from continuing representation of petitioner. I dissent from the holding to accept the Defender General's decision to refuse to appoint new counsel to replace him.